THE STATE, EX REL. CORRIGAN, PROS. ATTY.,
APPELLEE AND CROSS-APPELLANT, *v.*
SEMINATORE ET AL., APPELLANTS AND CROSS-APPELLEES.

(No. 80-719—Decided June 24, 1981.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Thomas P. Gill,* for appellee and cross-appellant.

*Mr. Nicholas Bucur, Jr.,* and *Mr. Zygmunt G. Slominski,* for appellants and cross-appellees members of board of mental retardation.

*Messrs. Baker & Hostetler, Mr. Richard R. Hollington, Jr., Mr. Louis A. Colombo* and *Mr. John H. Burtch,* for appellant and cross-appellee William Silverman & Company.

WHITESIDE, J. This case presents two novel issues: (1) to what extent and how are public officers entitled to counsel when an action is brought against them by the public officer who is required to serve as their attorney, seeking recovery from them for an act performed in the furtherance of their duties as such officers; and (2) whether a public agency has the implied power to expend public funds for advertising purposes to disseminate information concerning the functioning of such public agency.

If the second question be answered in the affirmative, there then arises the question of whether an expenditure of public money for newpaper advertisements setting forth a public agency's latest offer to striking employees constitutes a proper reason for, and method of, disseminating information to the public concerning such public agency. In addition, there is presented the question of what constitutes compliance with the requirements of Civ. R. 56(E) that affidavits with respect to summary judgment be made on personal knowledge.

R. C. 309.09[1] provided that "[t]he prosecuting attorney shall be the legal adviser of***all other county officers and boards***." By that section, the prosecuting attorney is required to "prosecute and defend all suits and actions which any such officer or board directs or to which it is a party." More importantly, R. C. 309.09 prohibits a county officer from employing any attorney other than the county prosecuting attorney, stating, "no county officer may employ any other counsel or attorney at the expense of the county, except as provided in section 305.14 of the Revised Code."

By virtue of R. C. 5126.01 creating a county board of mental retardation in each county, such board is a county board within the contemplation of R. C. 309.09[2]

---

[1] Since this cause arose in 1974, all references to and quotations of statutes in this opinion are to those in effect in 1974.

[2] R. C. 5126.01 (now 5126.02) provided, in pertinent part, as follows:

"There is hereby created in each county a county board of mental retardation consisting of seven members, five of whom shall be appointed by the board of county commissioners of the county, and the other two shall be the probate judge of the county or

The common pleas court directly appointed an attorney for the defendant board members, in effect finding the prosecuting attorney not qualified to represent them. This action was not technically consistent with R. C. 305.14, which provides that the common pleas court may authorize the board of county commissioners to employ legal counsel to assist in the defense of any action or proceeding to which a county board or officer may be a party or has an interest.[3] In addition, R. C. 305.14 contemplates an application by both the prosecuting attorney and the board of county commissioners for appointment of counsel. R. C. 305.17 provides that the board of county commissioners shall fix the compensation of persons appointed or employed pursuant to R. C. 305.14.

Under ordinary circumstances, the common pleas court should not authorize the appointment of counsel for any county board or officer, even with respect to an action pending in the court, unless an application for such appointment is made by both the prosecuting attorney and the board of county commissioners. Application by the prosecuting attorney ordinarily is necessary because the counsel being appointed will fulfill a duty otherwise imposed by law upon the prosecuting attorney. Application by the board of county commissioners is necessary because it is that board which not only must fix the compensation to be paid for the person so appointed but also must provide the necessary funds for that purpose. Where, as here, either the prosecuting attorney or the board of county commissioners refuses to afford counsel to a county board in defense of an action pending against the

---

his delegate and one other person appointed by him. Each member shall be a resident of the county. Of the five members appointed by the board of county commissioners, at least one shall be a parent of a mentally retarded person and four shall be persons interested or knowledgeable in the problems of mental retardation and other allied fields. * * * Board members shall serve without compensation, but shall be reimbursed for necessary expenses incurred in the conduct of board business."

[3] R. C. 305.14 provided as follows:

"If it deems it for the best interests of the county, the court of common pleas, upon the application of the prosecuting attorney and the board of county commissioners, may authorize the board to employ legal counsel to assist the prosecuting attorney, the board, or any other county board or officer, in any matter of public business coming before such board or officer, and in the prosecution or defense of any action or proceeding in which such county board or officer is a party or has an interest, in its official capacity."

members of that board, mandamus would be an appropriate remedy to compel the prosecuting attorney and the board to make application to the common pleas court, because failure to do so constitutes an abuse of discretion. Even assuming that the common pleas court erred in the methodology of affording counsel to defendant board members, there should be no reversal unless such error has been demonstrated to be prejudicial to plaintiff.

Plaintiff, as prosecuting attorney, has sustained no prejudice as a result of the order. Plaintiff admits that his interests are adverse to that of defendant board members. In fact, his interests are so adverse that he contends that defendant board members should not be allowed representation at public expense. This implies that defendant board members (who received no compensation for their services from the county) should be required personally to bear the costs of defending this action and personally required to pay any judgment. But, contrary to these contentions, plaintiff joined the defendant board members as parties both individually and as members of the Cuyahoga County Board of Mental Retardation.

Clearly, this action is brought against defendant board members in their official capacity.[4] It is also quite clear that this action is brought against defendant board members to recover from them for actions which they performed in their official capacity as members of the board of mental retardation in furtherance of the public functions of said board, rather than personally for their own benefit. There is no hint in the complaint, or otherwise in this case, that any of the defendant board members received any personal benefit from the expenditure of any public funds. If there be a benefit conferred by the expenditure of the funds in question, it was a public benefit only.

The contention of plaintiff is that the expenditure was

[4] The fact that only five of the seven board members have been joined as parties defendant does not change the fact that it is board action that is being challenged. The issue is the authority of the board to act, no individual member of the board purporting to act other than part of the majority of the board. The duty of the prosecuting attorney under R. C. 309.09 to represent the board is the same whether the action be unanimous or only by a majority vote, and that duty cannot be avoided by joining in their official capacity only the five board members who voted in the affirmative on the resolution.

unauthorized, not that it was made for private or personal purposes.

In this regard, R. C. 309.09 is clear—it is the duty of the prosecuting attorney to defend all actions to which any county officer or board is a party. Where the prosecuting attorney brings an action against such county board or officer in his official capacity, it is ordinarily in the best interests of the county that separate, independent counsel be appointed to defend such county officer or board in order to assure that there be no conflict of interests and that the county receive proper representation on both sides of the issue involved.

Although authorized by a split five-to-two vote, the expenditure involved was a board expenditure determined to be for a proper board purpose by the board inself. The issue is whether the board of mental retardation exceeded its power in authorizing this particular expenditure. R. C. 5126.01 provided that board members "shall be reimbursed for necessary expenses incurred in the conduct of board business." The judicial determination of whether a particular expenditure authorized by the board is within the power of the board to authorize constitutes board business, and expenses incurred in such litigation are reasonably necessary expenses.

With respect to criminal matters, it has been held that a court of common pleas has inherent power to appoint counsel to assist the grand jury where the prosecuting attorney is disqualified. *State, ex rel. Thomas,* v. *Henderson* (1931), 123 Ohio St. 474. Reliance upon inherent power is not necessary here, inasmuch as R. C. 305.14 confers power upon the common pleas court to authorize the appointment of legal counsel other than the prosecuting attorney to represent a county board or officer in a pending action where to do so is in the best interests of the county.

While R. C. 305.14 contemplates a joint application of the prosecuting attorney and the board of county commissioners for such appointment, we find nothing in that statute which confers upon the prosecuting attorney the power to defeat the jurisdiction otherwise vested in the common pleas court to authorize appointment of counsel. Here, the prosecuting attorney not only failed to make the application but vigorously op-

posed appointment of other counsel, although admitting a conflict of interest exists.

Although theoretically the board of county commissioners could have taken action by resolution, an application to court upon behalf of the board of county commissioners of necessity would have been made by the prosecuting attorney, since, by virtue of R. C. 309.09, the prosecuting attorney is the attorney for the board of county commissioners. In short, failure of the common pleas court to act would have in effect surrendered to the prosecuting attorney the jurisdiction of that court to determine whether appointment of different counsel is in the best interests of the county.[5]

If the prosecuting attorney and the board of county commissioners had made the joint application for appointment of counsel, as proper exercise of their duties would require, the same result would have ensued. The only possible distinction might be different counsel being appointed if the board of county commissioners had made the appointment. However, there is no demonstration of any prejudice resulting to anyone because of the manner of the appointment of the counsel. Accordingly, we find that the Court of Appeals erred in reversing the order of the common pleas court, since no prejudice has been sustained by any party as the result of such order.[6]

The Court of Appeals found that the affidavit of defendant board chairman did not meet the requirements of Civ. R. 56(E)[7]

---

[5] In *Thomas,* it is stated at page 479:

"One may easily conceive of a variety of illustrations under which the prosecuting attorney would be embarrassed, and the performance of his duties rendered difficult, and no statutory provision has been made for such cases. Manifestly the appointment of an assistant under the direction of the prosecutor would not obviate the difficulty."

Disqualification of the prosecuting attorney because of conflict of interest, he being the instigator of the action against defendant board members, is clearly one of those circumstances where the prosecuting attorney is disqualified with there being no statutory provision for such case.

[6] In light of our conclusion that the board did not exceed its powers or act improperly in authorizing the advertising expenditure, the board members arguably would be entitled to payment of the legal fees for defending the board action as necessary expenses under former R. C. 5126.01.

[7] Civ. R. 56(E) provides as follows:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively

which sets forth three requirements for an affidavit: (1) that it be made on personal knowledge, (2) that it set forth facts which would be admissible in evidence, and (3) that it affirmatively show the affiant to be competent to testify to the matters stated. In addition, the rule requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

While the form of the affidavit of defendant board chairman submitted in support of the motion for summary judgment leaves much to be desired, it is sufficiently in compliance with Civ. R. 56(E) as to require the adverse party to respond by affidavit or otherwise as provided by Civ. R. 56. The specific allegation in the affidavit that it was made upon personal knowledge is sufficient to meet this requirement of Civ. R. 56(E) and, if the adverse party contends otherwise, an opposing affidavit setting forth the appropriate facts must be submitted. There is an affirmative indication that defendant board chairman was competent to testify as to the matters stated, the affidavit specifically indicating that he was the chairman of the board of mental retardation. The requirement of Civ. R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.

Although the Court of Appeals found to some extent the attached documents to be hearsay, the statement in the affidavit is that the papers attached are letters and documents sent or received by the board in the course of its business. In this case, it is the fact that such correspondence took place, not the truth of any assertion therein, that would become of importance in determining whether the board acted in good faith.

The statement in the affidavit that the facts set forth in

---

that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

the preliminary statement are incorporated and "are true to the best of my knowledge and belief" is sufficient to constitute an affidavit. The form leaves much to be desired, especially when read in light of the preliminary statement of facts because in some instances it is not clear what matters are argument and what matters are factual statements. It is within the sound discretion of the trial court to require such an affidavit to be made more precise and to include, rather than incorporate by reference, the facts which are being verified. In this case, however, the trial court exercised its discretion to accept the affidavit in the form submitted. We find no abuse of discretion, and the Court of Appeals erred in finding the affidavit to be insufficient as a matter of law.

The third issue raised relates to and is dispositive of the merits of the controversy. The basic issue is whether a public agency has the implied authority to expend public funds for dissemination of information to the public, or those with which it may be dealing, by means of a newspaper advertisement, in the absence of either an express statutory authorization or prohibition for expenditure of public funds for that purpose.

In support of his position that there is no such authority, plaintiff relies upon *Cleveland* v. *Legal News Publishing Co.* (1924), 110 Ohio St. 360, and *Vindicator Printing Co.* v. *State* (1903), 68 Ohio St. 362. Neither of those cases is applicable or controlling. In both of those cases, an expenditure beyond that authorized by law was made for publications. In *Vindicator*, publications in excess of the number authorized by statute were made. In *Cleveland,* a rate for publication in excess of that authorized by statute was paid. In both instances, there was, in effect, a statutory prohibition with respect to the expenditure, inasmuch as the expenditure of a lesser amount was expressly authorized by statute. Both cases impliedly recognize the propriety of the utilization of newspaper advertising as a means to be used by a public agency for dissemination of information to the public. Neither involved the issue of whether there is an implied power of a public agency to disseminate information by that means.

It has long been recognized that an advertisement in a newspaper is an effective means of giving notice to the general public. Many statutes require notice by publication of certain

matters. Utilization of newspaper advertisements as notice has also been recognized by statute regulating the rates and designating the type styles for legal advertising. See R. C. 7.10, 7.101, 7.11, and 7.12.[8]

With respect to the Cuyahoga County Board of Mental Retardation, there is no statute expressly authorizing or expressly prohibiting the utilization of newspaper advertising as a means of communication or dissemination of information to others. The board, however, is expressly authorized to employ such personnel as are necessary, and to provide necessary services, facilities, transportation and equipment, in connection with administration and supervision of facilities, programs and services established pursuant to R. C. 5127.01, as well as to perform such powers and duties as are prescribed by the Commissioner of Mental Retardation.[9] The county

---

[8] In numerous instances, public funds are expended for dissemination of information to the general public. Many agencies prepare reports or brochures concerning the functions of the agency to distribute to those who are concerned with obtaining that information. Many agencies employ persons to respond to inquiries from the public as to the functioning of the agency or as to other information available from the agency. In most instances, there is no express statutory authority for such expenditures of public funds, but it is extremely doubtful that anyone would contend that the dissemination of information to the general public is not a proper expenditure of public monies. The wisdom of the nature of the publication and the means utilized for dissemination may be brought into question, but the public purpose involved cannot properly be questioned.

[9] R. C. 5126.03 (now 5126.05) with respect to the powers and duties of the county board of mental retardation provided as follows:

"The county board of mental retardation, subject to the rules, regulations, and standards of the chief of the division of mental retardation and developmental disabilities shall:

"(A) Administer and supervise facilities, programs, and services established under section 5127.01 of the Revised Code and exercise such powers and duties as prescribed by the chief;

"(B) Submit an annual report of its work and expenditures, pursuant to section 5127.01 of the Revised Code, to the chief and to the board of county commissioners at the close of the fiscal year and at such other times as may be requested;

"(C) Employ such personnel and provide such services, facilities, transportation, and equipment as are necessary;

"* * *

"Any county board of mental retardation may enter into a contract with another such board or with a public or nonprofit agency or an organization of the same or another county, to provide the facilities, programs, and services authorized in section 5127.01 of the Revised Code, upon such terms as may be agreeable.

board of mental retardation must appoint an administrator or executive secretary to administer its work and, with the approval of the board, to appoint all other necessary employees.[10]

The board of county commissioners was required by R. C. 5126.03 to levy such taxes and make such appropriations as are sufficient to enable the county board of mental retardation to perform its functions and duties. No question has been raised as to the availability of the funds for the advertising, the means utilized to place the advertisement or the amount expended. The sole issue raised has been the legality of any expenditure for the advertisements, regardless of the means utilized or the amount expended.

The advertisement in question is entitled, "An Open Letter to All Teachers and Parents of the Mentally Retarded in Cuyahoga County." It could not be seriously contended that the board of mental retardation has no implied authority to address a letter to teachers and parents of the mentally retarded with respect to a matter directly affecting the performance of the duties imposed upon the board by law. This would involve the expenditure of public funds for the dissemination of information, albeit in the form of preparation of letters and postage. What plaintiff challenges is the means utilized to accomplish the same purpose. Even assuming that this court would agree that the means utilized are not the best or most appropriate, nevertheless, it is within the implied power of a public agency to disseminate information both to those who are directly affected by its operation and the general public. Such a function may be fairly implied where it is reasonably related to the duties of the public agency.

------
"* * *

"The board of county commissioners shall levy taxes and make appropriations sufficient to enable the county board of mental retardation to perform its functions and duties as provided by this section."

R. C. Chapter 5127 was repealed effective August 7, 1976, and replaced by present R. C. Chapter 5126.

[10] R. C. 5126.04, with respect to the administrator, provided as follows:

"The county board of mental retardation shall appoint an administrator or executive secretary who shall administer the work of the board of mental retardation, subject to the regulations of such board.

"With the approval of the board, such administrator or executive secretary shall appoint all other employees necessary to fulfill the duties invested in such board."

Whether or not it is appropriate to disseminate the information, the means to be utilized therefor, including advertising in newspapers, lies in the first instance within the sound discretion of the public agency involved. Only where an abuse of discretion is shown either as to the nature of the information, the means of dissemination or the amount of money expended are the courts authorized to interfere with the exercise of such implied power.

In light of the foregoing, the complaint herein fails to state a claim for relief. There is no allegation of bad faith or abuse of discretion; rather, the complaint merely recites that the advertisements were made and implies that this is *per se* illegal. We reject this contention of plaintiff. Utilization of newspaper advertisement for dissemination of information to those directly affected, as well as the general public, unless prohibited by statute, is an implied power of a public agency authorized to perform specific functions and to expend monies therefor, so long as money for such purpose has been appropriated by the appropriating authority.

In this case, the appropriating authority is the board of county commissioners. Although it is alleged that payment has been made, presumably payment was made by the county auditor with approval of the county commissioners.[11]

Even if there were doubt as to the legality of the expen-

---

[11] Although the complaint alleges that payment was made to defendant William Silverman & Company after the notification by the assistant prosecuting attorney to the board of mental retardation that he considered the expenditure to be unauthorized, the record is not at all clear as to how the payment was effected. There is no indication that payment was made other than by warrant of the county auditor pursuant to R. C. 319.16, which requires, in most instances, that the claim be allowed by the board of county commissioners before a warrant will be issued. There is no contention that the payment for the advertisement was not allowed by the board of county commissioners or was not issued by warrant of the county auditor or was made other than in the manner provided by R. C. 319.16. Nor is there any explanation in the record as to why plaintiff in light of his immediate notification to the board of his contention of illegality did not similarly notify the county commissioners and the county auditor or take immediate action under R. C. 309.12 to enjoin payment. Among the papers attached to the affidavit of the board chairman is an unexecuted copy of an apparent voucher for payment to defendant Silverman, which voucher form provides not only for the approval of the board of county commissioners but also for approval of the legality of the claim by an assistant county prosecutor. How payment was effected, however, is not clearly apparent from the record.

diture herein involved, there is nothing to indicate that it was not made in good faith.

As to the claim against defendant William Silverman & Company, the service has been fully performed, and the benefit contracted for has been conferred upon the board of mental retardation, and neither such work nor such benefit can be returned. Utilizing basic equitable principles of restitution, in the absence of fraud or mistake, there ordinarily can be no recovery of public funds paid for work actually performed or other benefits actually received. *Bd. of Commissioners* v. *Noyes* (1878), 35 Ohio St. 201; *Thomas* v. *State, ex rel. Gilbert* (1907), 76 Ohio St. 341; and *State, ex rel. Hunt*, v. *Fronzier* (1907), 77 Ohio St. 7. See, also, *State, ex rel. Gillie*, v. *Warren* (1973), 36 Ohio St. 2d 89, and *State, ex rel. Parsons*, v. *Ferguson* (1976), 46 Ohio St. 2d 389, denying recovery of payments erroneously made in good faith and under color of law.

For these reasons, we find that the common pleas court rendered a correct judgment, and the reversal by the Court of Appeals is in error. Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

WHITESIDE, J., of the Tenth Appellate District, sitting for P. BROWN, J.