CITY OF CLEVELAND, APPELLEE AND CROSS-APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS AND CROSS-APPELLEES.

(No. 82AP-517—Decided March 17, 1983.)

*Mr. James E. Young,* director of law, *Messrs. Vorys, Sater, Seymour & Pease, Mr. Thomas M. Taggart* and *Mr. F. Daniel Balmert,* for appellee and cross-appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Ms. Nancy J. Miller, Messrs. Fox & Clear* and *Mr. Bernard C. Fox,* for appellants and cross-appellees.

REILLY, J. Plaintiff-appellee, city of Cleveland, filed a complaint for declaratory judgment alleging that defendants-appellants, the Industrial Commission and the Administrator of the Bureau of Workers' Compensation, assessed $3,072,724.74 in workers' compensation premiums against it without authority. Defendants filed their answer in due course. The parties entered a Stipulation of Facts, which quoted in part as follows:

"3. At all times material herein the City furnished the County Auditor of the County of Cuyahoga (hereinafter, the 'Auditor') with reports (which reports have never been determined to be incorrect in any manner by the Bureau or the Commission) showing the amount of money expended by it for employee payrolls during the preceding calendar year. The Auditor duly furnished to the Bureau this payroll information as required by Section 4123.49, Ohio Revised Code.

"4. In March, 1977, the Commission and the Bureau determined, calculated and published the workers' compensation merit rating for the City. This merit rating, effective January 1, 1977, when multiplied by the City's payroll for calendar year 1976, established the workers' compensation premium due from the City, as calculated by the Bureau, for

calendar year 1976 and the City was thereafter billed for said amount through the Auditor pursuant to Section 4123.49 of the Ohio Revised Code.

"5. In March, 1978, the Commission and the Bureau determined, calculated and published the workers' compensation merit rating for the City. This merit rating, effective January 1, 1978, when multiplied by the City's payroll for calendar year 1977, established the workers' compensation premium due from the City, as calculated by the Bureau, for calendar year 1977 and the City was thereafter billed for said amount through the Auditor pursuant to Section 4123.49 of the Ohio Revised Code.

"6. The City, through the Auditor, fully paid all sums certified by the Commission to the Auditor as its contributions to the public insurance fund for payroll years 1976 and 1977.

"7. On or about November 14, 1979 the Bureau, through its Administrator, mailed the letter attached hereto as Stipulation Exhibit A to the Mayor of the City enclosing a Rate Revision notice dated November 8, 1979 directing the Auditor to draw its warrant in favor of the Treasurer of the State of Ohio in the sum of $3,072,724.74, the total amount of the underbillings for payroll years 1976 and 1977.

"8. On February 29, 1980, the Commission issued its Decision and Order on this matter. A copy of said Decision and Order is attached hereto as Stipulation Exhibit B.

"9. Between March, 1977 and October, 1979, the Bureau used some of the data in the merit rating calculation containing the error which gave rise to the underbillings referred to in Stipulation Exhibit B on numerous and various occasions including, but not limited to, the adjudication of the City's rate protests filed in prior years, handicapped employee reimbursement applications and other matters pertaining to the City's workers' compensation premium rates.

"10. Prior to November 26, 1979 neither the Bureau nor the Commission had any written or published regulation, rule or guideline either authorizing or prohibiting the collection of underbilled workers' compensation premiums when the underbilling arose as a result of errors or miscalculations by the Bureau in determining an employer's premium rates.

"11. The promulgation of Ohio Administrative Code Rules Section 4121-7-28 and 4121-7-27 represent attempts by the Bureau to codify its prior practices, policies and procedures with respect to the subjects addressed by those rules. * * *"

The trial court in its decision made the following Findings of Fact in addition to the foregoing stipulations:

"Stipulations of Fact, numbered 1 through 12, have been agreed upon by the parties hereto and are hereby accepted by the Court as Findings of Fact and are hereby incorporated by reference as though fully rewritten herein. In addition, the Court makes the following additional Findings of Fact:

"13) Plaintiff, City of Cleveland, knew at all times of the mistake as to rating by the Defendant, Industrial Commission of Ohio, but purposely remained silent as to such mistake.

"14) Although there was no written rule, regulation or policy of the Defendant, Industrial Commission of Ohio, to either bill or collect or not to bill or collect additional premiums determined to be due as a result of said Defendant's error after a period of two years, it had been the unwritten policy or 'rule of thumb' not to bill or collect after a period of two years.

"15) No party, other than Plaintiff, had ever been billed or collected from after a two year period to the knowledge of all of the witnesses.

"16) The underbilling for the year 1976 was two million eight thousand two hundred sixty-four dollars and twenty-two cents ($2,008,264.22).

"17) The billing for this shortage was made more than two years later.

"18) The underbilling for the year 1977 was one million sixty-four thousand four hundred sixty dollars and fifty-two cents ($1,064,460.52).

"19) The billing for this shortage was made less than two years later.

"20) This Court has jurisdiction to decide the matters presented in the Complaint."

The trial court held in favor of plaintiff for $2,008,264.22, which represented an underbilling due to a clerical oversight for premiums originally due in 1976, and for the Industrial Commission in the amount of $1,064,460.52, which also represented an underbilling due to a clerical oversight for premiums originally due in 1977.

The court's decision is based on the finding that, when the Bureau of Workers' Compensation makes a clerical error in determining an employer's bill for workers' compensation premiums, the Industrial Commission has the inherent power to order the employer to pay the corrected bill subsequently sent by the bureau. The court also found, however, that the testimony showed that the Bureau of Workers' Compensation, in the past, had failed to rebill employers if the error was not discovered until more than two years after the original bill was submitted. Consequently, the court found that it was a violation of plaintiff's constitutional equal protection rights to bill a city for premiums originally due in 1976, since such rebilling was outside the two-year period established by the bureau's previous conduct. The court allowed the rebilling for premiums originally due in 1977 since it was within the two-year period.

Defendants allege three assignments of error, as follows:

I. "The trial court erred in finding that the City of Cleveland had been denied equal protection of the law under the Fourteenth Amendment to the United States Constitution."

II. "The trial court erred in admitting evidence of past practices of the actuarial Department of the Bureau of Workers' Compensation in regard to the collection of money owed to the state insurance fund."

III. "The trial court erred in overruling the commission's motion for judgment at the close of Cleveland's evidence."

Plaintiff advances one cross-assignment of error, as follows:

"The trial court erred as a matter of law in determining and declaring that the defendants as a result of their implied or inherent powers, were entitled to be paid and to bill the plaintiff for One Million Sixty-Four Thousand Four Hundred Sixty and 52/100 Dollars ($1,064,460.52) in underbilled Workers' Compensation premiums for the year 1977."

Defendants' first assignment of error is not well-taken. Section 2, Article I of the Ohio Constitution provides in pertinent part:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; * * *."

This section is co-extensive with the Fourteenth Amendment to the United States Constitution. See *State, ex rel.,* v. *Ferris* (1895), 53 Ohio St. 314. Thus, whether the Fourteenth Amendment Equal Protection Clause applies directly to a municipality, a municipal corporation is entitled to be protected from laws, acts or behavior which would otherwise violate the Fourteenth Amendment, because Section 2, Article I of the Ohio Constitution applies to a municipal corporation. The actions of defendants are also subject to Section 26, Article II of the Ohio Constitution, which states "[a]ll laws, of a general nature, shall have a uniform operation throughout the state; * * *."

The essentials necessary for a general law to operate uniformly are included in *State, ex rel. English,* v. *Indus. Comm.* (1954), 160 Ohio St. 443, 449 [52 O.O. 27], as follows:

"1. The law must operate equally upon the members of the class to be affected.

"2. It must embrace all persons who are or may be in like situations and circumstances.

"3. The designation of the class must be reasonable and not unjust or capricious.

"4. The designation must be based upon a real distinction."

The trial court found that the Industrial Commission had not attempted to collect previously underbilled premiums which had been due longer than two years. There is testimony in the record indicating that this was the unwritten policy of the Industrial Commission. See Ohio Adm. Code 4121:7-17(C). Although there may have been conflicting testimony on this issue, it was for the trial court, as trier of the fact, to determine the credibility of the witnesses and the weight of the evidence. At any rate, the record supports the findings that plaintiff received disparate treatment in violation of the foregoing constitutional provisions.

Moreover, in addition to violations of the Ohio Constitution, the record supports the trial court's decision, in finding violations of basic principles of administrative law, as follows:

"Specifically, a board or commission in administering an enactment of the legislature must have sufficient standards or guidelines which will insure that the legislative scheme being enforced is done so in an evenhanded and non-discriminatory fashion. The Tenth District Court of Appeals (Franklin County) stated in *In re: Blue Cross* v. *Superintendent of Insurance,* No. 73AP-158 (1973), that there is a 'social value in encouraging the security of transactions, and for some degree of stability. Persons engaged in business have a right to know what government policy and rules are in advance * * *. [I]f there be no rule, then the result becomes as flexible as the grass in a breeze. It is important to the deomocratic [sic] process that commissions say what they are doing, and adhere to what they have said unless and until a change is clearly indicated.'

"The Commission in the instant case singled out the City of Cleveland for payment of previously underbilled Workers' Compensation premiums more than two years after the rate effective for the year 1976 was established. In so doing, the Commission violated its long standing policy of not billing or attempting to collect underbillings more than two years after their effective date."

The Industrial Commission relies on *Trenton* v. *New Jersey* (1923), 262 U.S. 182, and *Newark* v. *New Jersey* (1923), 262 U.S. 192. These cases are distinguishable since both involve the state's performance of governmental functions and services while the actions in this case are proprietary in nature as they relate to the employer-employee relationship like any other Ohio employer.

Therefore, *Cleveland* v. *Clements Bros. Constr. Co.* (1902), 67 Ohio St. 197, 214-215, applies as follows:

"* * * As suggested by counsel for defendants in error, the statute here under consideration, absolutely ignores the fact that municipal corporations in their property rights, and their power to make contracts for local improvements for the benefit of their own citizens, are entitled to the same immunities and are protected by the same constitutional guarantees which shield the property of individuals or private corporations from legislative aggression. In considering the rights and powers of municipal corporations, in the case of *Railroad Co.* v. *New Orleans,* 26 La. An., 481, the Supreme Court of Louisiana says: 'A municipal corporation possesses two classes of powers, and two classes of rights, public and

private. In all that relates to one class, it is merely the agent of the state, and subject to its control. In the other, it is the agent of the inhabitants of the place; the corporators: maintains the character and relations of individuals, and is not subject to the absolute control of the legislature, its creator.' "

Hence, the guarantees of the Fourteenth Amendment relate to a municipal corporation in this case, as they apply to any private person or corporation. The remainder of the cases which defendants cite are not Ohio decisions.

The following language from the trial court's decision summarizes its rationale:

"A fundamental principle of constitutional and administrative law is that when a public authority makes decisions with 'an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances, material to their rights is a denial of equal justice within the prohibition of the Constitution. *Yick Wo* v. *Hopkins,* 118 U.S. 356, at 373 (1886). The constitutional prohibitions of the Fourteenth Amendment are coextensive with Article I, Section 2 of the Ohio Bill of Rights."

Defendants' second assignment of error is also not well-taken. The evidence of defendants' practice under the circumstances of this case was relevant and properly admitted into evidence, since the issue of whether the laws of Ohio have been uniformly administered to all employers can only be determined from evidence concerning the past practices of the state agency involved.

As to defendants' third assignment of error, the cause of action in this case involves the alleged discriminatory conduct of defendants in violation of plaintiff's right to equal protection of the laws. The contentions in this assignment of error are not actually involved with the issues in this case concerning the uniform administration of such laws and issues previously set forth.

Accordingly, defendants' third assignment of error is not well-taken.

As to plaintiff's cross-assignment of error, the trial court's decision reads in part as follows:

"It is well established that public officers possess, in addition to those powers expressly conferred upon them by statute, such implied powers as are necessary for the due and efficient exercise of the powers expressly granted. Where an officer or agency, such as the Industrial Commission, or the Administrator of the Bureau of Workers' Compensation, is empowered by the Constitution or a statutory grant of authority to perform a particular function, in the absence of specific directions regarding the method through which that function will be performed, the power and authority necessary to perform the statutory duty is implied. *State, ex rel. Copeland,* v. *State Medical Board,* 107 Ohio St. 20 (1923); *State, ex rel. Hunt,* v. *Hildebrant,* 93 Ohio St. 1 (1915). The business of the state must be conducted on as equally intelligent lines as private business and, applying concepts of agency law, if a master commands a servant to do a particular act, without detailed instructions regarding the performance of the duty, the servant is entrusted to exercise intelligent discretion as to the manner of completing the duty. *State, ex rel. Copeland,* v. *State Medical Board, supra,* at 28; *State, ex rel. Hunt,* v. *Hildebrant, supra,* at 11."

Moreover, in *State, ex rel. Corrigan,* v. *Seminatore* (1981), 66 Ohio St. 2d 459, 470 [20 O.O.3d 388], the Supreme Court indicated that implied powers do exist where they are reasonably related to the duties of the public agency. The trial court wrote as follows:

"The Industrial Commission of Ohio is a board created by Article II, Section 35 of the Ohio Constitution. The duties imposed by that section include, *inter alia,* fixing rates of contribution and to collecting such funds. The Commission is further

empowered in Sec. 4123.34, R.C., to fix and maintain the lowest possible premium for each class of occupation consistent with the maintenance as a solvent state insurance fund. * * *"

As to contributions by public employers, R.C. 4123.39(A) indicates that the Industrial Commission is empowered to:

"* * * [C]lassify * * * taxing districts into such groups as will equitably determine the contributions in accordance with the relative degree of hazard, and shall also merit rate such * * * taxing districts, * * * so as ultimately to provide for each taxing subdivision contributing an amount sufficient to meet its individual obligations and to maintain a solvent public insurance fund."

Further, the Industrial Commission is empowered to institute proceedings for recovery of any money due the State Insurance Fund. R.C. 4123.92.

The trial court noted in its decision the following:

"Concomitant to that power and the fiduciary duty to the Fund is the authority to correct clerical errors. *State, ex rel. Weimer,* v. *Industrial Commission,* 62 Ohio St. 2d 159 [16 O.O.3d 174] (1980). Not only does the Industrial Commission have the power, but it has the duty to correct clerical errors that result in a depletion of the Fund."

It is noteworthy that the correction in this case did not involve any change of discretionary judgment, but merely a correction of a clerical error in the execution of a ministerial act. Defendants had full authority to correct such an error.

Thus, plaintiff's cross-assignment of error is not well-taken.

For the foregoing reasons, the trial court's judgment is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and MOYER, JJ., concur.