OPINION
Appellants, LRL Properties, LRL Properties II, Ltd., and Melvin Ross, appeal from a summary judgment by the Portage County Court of Common Pleas, granted in favor of appellees.
Appellants are the former owners of Kenwood Courts, a large-scale low-income housing project, consisting of 216 apartments in Phase I, owned by LRL, and 228 apartments in Phase II, owned by LRL II. Appellant Melvin Ross is a general partner of both LRL entities. Many of the tenants of Kenwood Courts participate in one of two rent subsidy programs, the Section 8 Existing Housing Program and the Section 8 Moderate Rehabilitation Program. Appellee PMHA is a political subdivision of the State of Ohio with the authority to administer low-income housing programs in Portage County, Ohio. The PMHA, as an agent of the Department of Housing and Urban Development ("HUD"), specifically administers the Section 8 housing programs in Portage County.
On February 1, 1994, appellants filed a complaint against appellees alleging claims for tortious interference with business relations, defamation, conspiracy to defame, fraud, and breach of contract. Appellants named eight defendants: the Portage Metropolitan Housing Authority ("PMHA"); members of the PMHA board of directors, Robert Durst, John Davison, Benito Antognoli, Thomas Sicuro, and Jack Crews; PMHA Director Christie Anderson, and PMHA employee Thomas Smith. Appellants' complaint alleged that the PMHA wrongfully pursued a political and/ or economic objective of replacing them as the owners of Kenwood Courts.
On March 12, 1998, appellees filed a motion for summary judgment, attaching the affidavits of each appellee, along with various exhibits to each affidavit, and deposition testimony from appellant Melvin Ross and his son, Daryl Ross. Christie Anderson, the Director of the PMHA, attested to the following facts in her affidavit:
 In March of 1987, the PMHA Board considered purchasing Kenwood Courts as public housing in an effort to address blighted areas in Portage County. The PMHA offered to purchase Kenwood Courts for appellants' asking price of $8 million dollars; however, the PMHA was unable to purchase the property because the City of Kent would not approve a "cooperation agreement," which was a legal prerequisite to the sale. As an alternative to purchasing Kenwood Courts, the PMHA submitted an application to HUD for PMHA participation in the Moderate Rehabilitation Program, a program that guarantees private rental property owners a rental subsidy for low income tenants for a period of 15 years if the property is renovated to HUD standards.
 In August of 1988, HUD awarded PMHA one hundred Moderate Rehabilitation Units to be allocated to properties in Kent. After consulting with HUD, the PMHA prepared an "Owner Application Form" and a "Selection Ranking System" for evaluating proposals for the Moderate Rehabilitation Program, both of which were approved by HUD. In October of 1988, the PMHA published advertisements in local newspapers requesting applications for the HUD program. In response to the advertisement, the PMHA received a proposal from Tony Rodriguez on behalf of his development entity, Renaissance Village Partnership ("RVLP"). RVLP's proposal indicated that it had an option agreement with appellants to purchase Kenwood Courts for $7 million. On November 28, 1988, the PMHA Board approved RVLP's proposal for further processing. On January 23, 1989, HUD awarded the PMHA an additional one hundred Moderate Rehabilitation units to be allocated to properties in Kent. Again, the PMHA advertised the units and received two proposals, one of which was from RVLP for use at Kenwood Courts. In June of 1989, the PMHA Board awarded an additional sixty-one Moderate Rehabilitation units to RVLP.
 As part of the further processing of RVLP's two applications for the Moderate Rehabilitation units, the PMHA staff conducted inspections of the apartment units at Kenwood Courts and reviewed tenant files. HUD also performed its own independent inspection and cost analysis of renovating units at Kenwood Courts to meet HUD's Housing Quality Standards. In December of 1989, HUD authorized the PMHA to sign an Agreement to Enter into Housing Assistance Payments Contract ("AHAP") with RVLP, which was a preliminary step in the Moderate Rehabilitation award process and, according to RVLP, was necessary for it to obtain a financing commitment.
 In January of 1990, RVLP notified the PMHA that it was unable to purchase Kenwood Courts as planned due to financing problems. RVLP requested that PMHA permit assignment of the AHAP contract from RVLP to appellants. Throughout the first six months of 1990, RVLP, PMHA, and HUD, with the knowledge and consent of appellants, discussed various options for the renovation and ownership of Kenwood Courts. These options included: (1) assigning RVLP's interest in the AHAP contract to appellants; (2) making additional efforts to RVLP to obtain financing; (3) entering a joint venture between RVLP and PMHA; and (4) purchasing Kenwood Courts through the Franklin Development Corporation, a local nonprofit corporation under PMHA control.
 Although the PMHA had received a memorandum from a HUD attorney, dated February 13, 1990, indicating that the AHAP contract could be assigned, in July of 1990, the PMHA was notified by HUD that HUD regulations did not permit the assignment of the AHAP contract to appellants. HUD advised the PMHA to readvertise the Moderate Rehabilitation units because RVLP was not making progress in obtaining an ownership interest in Kenwood Courts, and the units that had been allocated to the PMHA were not being used. At the suggestion of PMHA's attorney, Antonios Scavdis, PMHA gave RVLP ten days to produce evidence of its ownership interest in Kenwood Courts. On August 27, 1990, the PMHA Board terminated the AHAP contract that had been awarded to RVLP due to its failure to obtain ownership of Kenwood Courts.
 On September 1, 1990, the PMHA readvertised the availability of the Moderate Rehabilitation units and received four proposals in response to its advertisement. Two of the proposals were for Kenwood Courts. One of the applicants was Associated Estates Corporation ("AEC"), which was actively negotiating an option to purchase Kenwood Courts from appellants. The second Kenwood Courts proposal was filed by appellants. In the opinion of the PMHA staff, neither of the applications contained sufficient information to permit further processing. The PMHA Board granted AEC a thirty-day extension to provide additional information, but AEC withdrew its application because it was unable to enter into a purchase agreement with appellants for Kenwood Courts.
 Appellants supplied the PMHA staff with some additional information pertaining to their application; however, appellants' application was rejected by the PMHA Board due to insufficient costs per unit and failure to have any definite plans for the upgrade of all of the units at Kenwood Courts. Appellants' proposed renovation costs per unit were about one half the cost that HUD had previously determined to be necessary to renovate the property and less than one half of AEC's estimated costs per unit.
 On October 30, 1990, appellants requested that PMHA reconsider their proposal. On November 7, 1990, appellants met with Christie Anderson, Tom Smith, and Antonios Scavdis, but appellants did not supply any additional information. At the meeting, Christie Anderson stated that she would respond in writing and also advise them of whether they had a right to a further appeal to the full PMHA Board. On November 14, 1990, Christie Anderson advised appellants that because their proposal failed to meet PMHA's initial screening criteria, they would not have a further right to appeal the denial of their proposal. On November 21, 1990, PMHA legal counsel also informed appellants that they were not entitled to appeal pursuant to federal regulations because their proposal had not been selected for further processing.
 On March 21, 1991, appellants contacted Christie Anderson and indicated that they were interested in having PMHA purchase Kenwood Courts. PMHA had proposed to HUD that the Moderate Rehabilitation Counts be converted into a cash lump sum so that PMHA could acquire and renovate Kenwood Courts. HUD denied the proposal because HUD's budget did not permit it to convert Moderate Rehabilitation funds into acquisition funds.
 On September 16, 1991, appellants entered into an agreement with J. Christopher Enterprises ("JCE") and MJM Management, Inc. for the management, sale and renovation of all of the apartment units at Kenwood Courts. Under the agreement, JCE would take control of the property and would be responsible for executing the Moderate Rehabilitation plan, and appellants would retain a limited ownership interest in Kenwood Courts. JCE and appellants revised appellants' original application for the Moderate Rehabilitation program and submitted the revised proposal to PMHA. The revised application corrected the deficiencies in appellants' original application, and PMHA approved the proposal on September 23, 1991.
In their motion for summary judgment, appellees asserted that pursuant to R.C. 2744.03(A)(5) and (6), they are immune from tort liability as long they did not act "with malicious purpose, in bad faith, or in a wanton or reckless manner." Appellees maintained that appellants could produce no evidence that any employee or Board member of PMHA acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellees argued that summary judgment was appropriate because reasonable minds could only conclude that appellees have acted at all times in good faith and within the scope of their public duties. Appellees further argued that appellants' allegation of breach of contract is only a disguised tort claim because appellants' alleged that PMHA denied them rent increases for the malicious purpose of "derogating Plaintiffs' business interest and ruining Plaintiffs' financial standing in furtherance of Defendants' goal that Plaintiffs sell Kenwood Courts and/or relinquish management thereof in favor of ownership and/or management by the PMHA or those with whom Defendants have a favored or preferred relationship." Appellees maintained that summary judgment was appropriate on appellants' "breach of contract" claim because appellants could produce no evidence to support malicious purpose on the part of appellees.
In response to appellees' motion for summary judgment, appellants argued that a genuine issue of material fact existed as to whether appellees were immune from tort liability. To support their argument, appellants filed the affidavit of Melvin Ross, sixty-two miscellaneous documents[1], and the depositions of Christie Anderson and Thomas Smith. Melvin Ross stated in his affidavit that "PMHA, Christie Anderson, Thomas Smith, and the PMHA Board engaged in forms of business, financial and emotional coercion which were applied to Plaintiffs thereby causing Plaintiffs to enter into a limited partnership with J. Christopher Enterprise and receive a 0.1% limited partnership interest." Ross's affidavit gave the following examples of how appellees forced appellants to sell Kenwood Courts: (1) Christie Anderson falsely told HUD that sixty units at Kenwood Courts had to be terminated from Section 8 assistance because the units were not maintained at HUD Housing Quality Standards when sixty units had not been terminated; (2) appellants did not receive rent increases to which they were entitled to under its Section 8 Housing HAP contract with PMHA; (3) PMHA treated appellants' application for the Moderate Rehabilitation Program in an unfair manner as a direct result of AEC's application; (4) beginning in February of 1990, Christie Anderson told appellants that the AHAPs could not be assigned; and (5) beginning in August of 1990, housing quality inspections conducted by PMHA became even more arbitrary and capricious and did not apply housing standards.
Appellants maintained that the evidence demonstrated that appellees continuously violated HUD regulations and PMHA rules and regulations to obtain political and financial advantage for themselves and their friends. Appellants argued that summary judgment on their tort claims was inappropriate because reasonable minds could conclude that appellees' actions rose to the level of maliciousness, recklessness, wantonness, and/or bad faith, which would defeat appellees' claims to immunity. Appellants also argued that summary judgment was inappropriate on their breach of contract claim because appellees did not meet their initial burden to warrant summary judgment on that claim.
On June 12, 1998, the trial court granted summary judgment in favor of appellees on all of appellants' claims, concluding that: (1) appellees are immune from tort liability because "[appellants'] Civ.R. 56 evidence fails to present a genuine issue of material fact of malice, or malicious, bad faith, or wanton and reckless conduct"; (2) appellants failed to present any Civ.R. 56 evidence indicating that appellants were legally entitled to rent increases claimed in their breach of contract claim; and (3) appellants' action was barred by the statute of limitations. From this judgment, appellants filed a timely notice of appeal assigning the following error:
 "The trial court erred when it granted summary judgment in favor of the defendants for every claim contained in the complaint for damages."
Summary judgment is inappropriate unless it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to the nonmoving party. In reviewing a motion for summary judgment, the evidence must be construed in a light most favorable to the party opposing the motion. Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45,47, 517 N.E.2d 904. Summary judgment may be granted only where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Appellants first contend that the trial court erred by determining that appellants' claims were barred by the statute of limitations when appellees' did not set forth the affirmative defense of the statute of limitations as grounds for its motion for summary judgment. As stated by the Ohio Supreme Court, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Because appellees did not set forth the affirmative defense of the statute of limitations as a basis for their motion for summary judgment, appellants did not have an opportunity to effectively respond to this claim.
Furthermore, appellees waived the affirmative defense of the statute of limitations because they did not set it forth as a basis for their motion for summary judgment. The expiration of the statute of limitations is not a jurisdictional defect; it is an affirmative defense that is waived if a party fails to raise it. State ex rel. Tubbs Jones v. Suster (1998), 84 Ohio St.3d 70,75, 701 N.E.2d 1002. In Jones v. Village of Chagrin Falls (1997),77 Ohio St.3d 456, 674 N.E.2d 1388, the Ohio Supreme Court discussed the effect of failing to raise an affirmative defense in a party's motion for summary judgment, even though that affirmative defense had been raised in the party's answer. The court stated: "[t]he practical effect, therefore, of Chagrin Falls' failure to raise the affirmative defense in its one and only summary judgment motion is the waiver of the defense." Id. at 457. Because appellees waived the affirmative defense of the statute of limitations, the trial court should not have determined that the expiration of the statute of limitations was a reason for granting summary judgment to appellees; however, the trial court's error is harmless because it granted appellants' motion for summary judgment for additional reasons besides the statute of limitations.
Appellants also contend that the trial court erred by determining that the PMHA was immune from tort liability. Appellants allege that R.C. 2744.03(A)(5) strips the PMHA of its immunity. R.C. 2744.03(A) provides, in part:
 "In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
"* * *
 "(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
"* * *."
PMHA is a political subdivision that performs governmental functions. See Country Club Hills Homeowners Assoc. v. JeffersonMetro. Housing Authority (1981), 5 Ohio App.3d 77, 78,449 N.E.2d 460. In Wilson v. Stark Cty. Dept. of HumanServ. (1994), 70 Ohio St.3d 450,639 N.E.2d 105, the Ohio Supreme Court explained the immunity afforded to political subdivisions performing governmental functions as follows:
 "Political subdivisions are shielded from civil liability as provided by R.C. Chapter 2744. R.C. 2744.02(A)(1) creates a broad immunity, subject to enumerated exceptions:
 "`For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omissions of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.'
 "R.C. 2744.02(B) provides five exceptions to the immunity created in R.C. 2744.02(A)(1) for political subdivisions. One of the exceptions, R.C. 2744.02(B)(2), establishes liability of political subdivisions for injuries caused by negligent acts performed by employees with respect to proprietary functions. There is, however, no such general exception for governmental functions. Consequently, except as specifically provided in R.C. 2744.02(B)(1), (3), (4), and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts. (Citation omitted.) There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress as alleged in this case." Id. at 452. (Emphasis added).
Appellants' claims of defamation, conspiracy to defame, fraud, and interference with business relations are all intentional torts; therefore, PMHA is entitled to immunity. Because appellants' allegations do not fall within any of the exceptions to immunity set forth in R.C. 2744.02(B), appellants' attempt to impose liability under R.C. 2744.03(A)(5) must fail. "R.C. 2744.03(A)(5) is a defense to liability; it cannot be used to establish liability." Cater v. City of Cleveland (1998), 83 Ohio St.3d 24,32, 697 N.E.2d 610, citing Hill v. Urbana (1997), 79 Ohio St.3d 130,135, 679 N.E.2d 1109. The trial court did not err by concluding that PMHA was immune from tort liability in this case.
Appellants also dispute the trial court's conclusion that the employees of the PMHA are immune from tort liability. Under R.C.2744.03(A)(6), political subdivision employees acting within the scope of their employment are immune from tort liability as long as they do not act "with malicious purpose, in bad faith, or in a wanton or reckless manner."
In Cook v. Hubbard Exempted Village Bd. of Educ. (1996),116 Ohio App.3d 564, 569, 688 N.E.2d 1058, we adopted the definitions of malicious purpose, bad faith, wanton, and reckless that were set forth in Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991),76 Ohio App.3d 448, 453-454, 602 N.E.2d 363, as follows:
 "`As to whether conduct would reflect a malicious purpose, the Supreme Court has held that "malicious" means "indulging or exercising malice; harboring ill will or enmity" (citation omitted). Furthermore, `malice' can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. (Citation omitted).
 "`* * * Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (Citations omitted).
 "Finally, an individual acts in a `reckless' manner `if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" (Citations omitted).
In their motion for summary judgment, appellees asserted that appellants did not have any credible evidence that any PMHA employee or Board member acted with malicious purpose, in bad faith or in a reckless manner. Appellees maintained that all of the actions taken by PMHA employees and Board members were in good faith and within the scope of their public duties, promoting the health, safety and welfare of residents of Portage County and providing safe and sanitary housing accommodations to low income families. In accordance with the burdens allocated by the Ohio Supreme Court in Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264, appellees pointed to the following evidence to demonstrate that appellants had no evidence to support their claims that appellees had acted with malicious purpose, in bad faith, or in a reckless manner:
 PMHA attempted to purchase Kenwood Court from appellants for $8 million, but the City of Kent was unwilling to enter into a cooperative agreement, a legal prerequisite to the purchase. Melvin Ross admitted in his deposition that he considered $8 million to be a fair price;
 RVLP applied for the Moderate Rehabilitation subsidy with the cooperation of appellants. Under the agreement between RVLP and the PMHA, RVLP would have paid appellants $7 million for Kenwood Court. Melvin Ross admitted in his deposition that he considered $7 million to be a fair price;
 The affidavits of each appellee stated that no one at PMHA knew the principals at Associated Estates and there was no favored relationship with that entity;
 In Christie Anderson's affidavit, she stated that appellants' proposal for the Moderate Rehabilitation subsidy was rejected because it failed to meet PMHA's initial screening criteria. Specifically, appellants' proposal indicated a rehabilitation expenditure for the units that was only one half of the amount proposed by Associated Estates Corporation and did not indicate whether all of the units at Kenwood Courts would be renovated; and
Appellants could not present any evidence that the PMHA arbitrarily enforced its housing standards. In Thomas Smith's affidavit he stated:
 "A good example of PMHA's experience of dealing with the conditions at Kenwood Courts is documented in the case of Kenwood Courts Apartments v. Kimberly Williams, Case No. K90 CVG 1045, Portage Municipal Court in which the Court found in favor of a former tenant of Kenwood Courts Apartments. Kimberly Williams' unit failed to meet HUD housing quality standards in 1989 and in 1990 at which point PMHA canceled its Section 8 contract with Plaintiffs. After reviewing evidence of repeated flooding, sewage back-up in the kitchen sink, plumbing problems, lack of screens and air conditioning as well as many other miscellaneous problems with the unit, the Court found that the `unit simply was not in decent condition and no serious effort to make it so was ever undertaken by [Kenwood Courts management].'"
Appellants maintain that they presented substantial evidence in response to appellees' motion for summary judgment, which demonstrated malice, recklessness, bad faith and ulterior motives on the part of the PMHA's employees. Appellants claim that many documents in evidence demonstrate that PMHA's employees continuously violated HUD regulations and PMHA rules in order to gain political and economic advantage for themselves and their friends. Appellants submitted sixty-two miscellaneous documents in support of their response to appellees' motion for summary judgment. Civ.R. 56(C) governs summary judgments and provides, in part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." (Emphasis added).
Because the documents submitted by appellants do not constitute evidence authorized by Civ.R. 56(C), appellants should have incorporated these documents by reference in a properly framed affidavit pursuant to Civ.R. 56(E). See Biskupich v.Westbay Manor Nursing Home (1986), 33 Ohio App.3d 220, 222,515 N.E.2d 632, citing State ex rel. Corrigan v. Seminatore (1981),66 Ohio St.2d 459, 467, 423 N.E.2d 105. Documents submitted in opposition to a motion for summary judgment which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and may not be considered by the trial court in deciding whether a genuine issue of material fact remains for trial. See Bushman v. Philbrick (June 29, 1990), Geauga App. No. 88-G-1485, unreported. Appellants failed to identify in their affidavit the documents that they submitted in support of their brief in opposition to summary judgment; thus, those documents were not authenticated in any way. An appellate court reviews a granting of summary judgment de novo, Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212; therefore, we will not consider appellants' unauthenticated documents in our determination of whether summary judgment was appropriately granted.
According to appellants, appellees intentionally treated appellants less favorably than other entities that had applied to participate in the Moderate Rehabilitation program in order to curry favor with the City of Kent, which allegedly did not wish to see appellants obtain the Moderate Rehabilitation subsidy. In reviewing appellants' response to appellees' motion for summary judgment, this court cannot find any evidence substantiating this claim. The only evidence that tied the City of Kent to the PMHA is Christie Anderson's deposition testimony that the City of Kent appoints two individuals to the PMHA board. Appellants' allegations that appellees were motivated by political gain is mere conjecture that is unsupported by any evidence and does not raise an inference of malicious purpose, bad faith or recklessness on the part of PMHA's employees.
Appellants also failed to support their allegation that PMHA's employees were motivated by financial gain with Civ.R. 56(C) evidence. That Christie Anderson or any of the PMHA board members had a financial incentive to reject appellants' Moderate Rehabilitation application is not substantiated by appellants in any way. Appellants' unauthenticated documents do not even support this allegation. For example, appellants point to PMHA board minutes from October 1, 1990, to support their allegation that the PMHA was financially motivated. Appellants set forth that PMHA was in need of money due to an absence of revenue because of its inability to acquire funds through taxation. The relative portion of those board minutes provides:
Attorney's Report
 Mr. Scavdis reported on a recent Ohio Appeals Court decision regarding a disagreement between an Ohio Metropolitan Housing Authority and the State Employee's Relation Board, regarding the applicability of the Ohio Revised Code to Housing Authorities collective bargaining relationships. Mr. Scavdis stated that the Appeals Court has determined that Housing Authorities are "Public Employers", and thus are subject to the decisions from SERB. Mrs. Anderson noted the difficulty this poses for Housing Authorities, as Housing Authorities are now subject to decisions by SERB regarding union contracts, without having the ability to increase income through taxation.
A review of those Board minutes reveals that appellants' characterization of the board minutes is somewhat inaccurate. Because appellants cannot point to any evidence of an improper motive on the part of PMHA's employees, we cannot conclude that appellants successfully raised an inference of malicious purpose, bad faith, or recklessness; therefore, the trial court did not err by concluding that PMHA's employees are immune from tort liability in this case.
The trial court properly granted summary judgment on appellants' tort claims because R.C. 2744 grants immunity to political subdivisions and their employees against such claims; however, R.C. 2744 does not immunize political subdivisions from claims for breach of contract. We must next determine whether the trial court appropriately granted summary judgment against appellants on their breach of contract claim.
In appellants' complaint, they alleged that appellees breached a Housing Assistance Payments contract by refusing to give appellants annual rent increases. The pertinent portions of that contract read as follows:
 "(A) If the Contract [housing] unit is in decent, safe and sanitary condition and the Owner is otherwise in compliance with the terms of the Lease and this Contract, the Contract rent shall be adjusted as follows:
 "(1) The Contract rent shall be adjusted as of any annual anniversary date of the Contract using the applicable Section 8 Annual Adjustment Factor most recently published by HUD in the Federal Register. The contract rent may be adjusted upward or downward. However, in no case shall the adjusted rent be less than the Contract rent on the effective date of this Contract."
In their motion for summary judgment, appellees argued appellants' breach of contract claim is merely a disguised tort claim because appellants' alleged that PMHA denied them rent increases for the malicious purpose of "derogating Plaintiffs' business interest and ruining Plaintiffs' financial standing in furtherance of Defendants' goal that Plaintiffs sell Kenwood Courts and/or relinquish management thereof in favor of ownership and/or management by the PMHA or those with whom Defendants have a favored or preferred relationship." Appellees maintained that summary judgment was appropriate on appellants' "breach of contract" claim because appellants have no evidence to support malicious purpose on the part of appellees.
In Dresher v. Burt, supra, the Ohio Supreme Court held:
 "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Id. at 293."
The trial court granted summary judgment on appellants' breach of contract claim, reasoning that appellants' evidence did not raise a genuine issue as to their entitlement to rent increases; however, appellants do not have the burden of demonstrating that they were entitled to rent increases until appellees satisfy their initial burden of demonstrating that appellants have no evidence to prove that appellees breached their contract. See id. Appellees' only argument for summary judgment on appellants' breach of contract claim was that it was a disguised tort claim; however, appellees' argument that they did not act with malice is immaterial to whether they breached their contract. Appellants' fourth cause of action was for breach of contract, and it merely alleged that appellees breached a Housing Assistance Payments contract; it was not a tort claim. To prevail on summary judgment, appellees were required to point to evidence demonstrating that appellants could not prove the essential elements of a breach of contract claim. Because appellees did not address whether appellants had any evidence to prove their allegation that appellees breached the parties' Housing Assistance Payments contract, they did not satisfy their initial burden underDresher. Appellees' motion for summary judgment on appellants' breach of contract claim should have been denied, and the trial court erred by granting summary judgment on that claim.[2]
Appellants' sole assignment of error has merit in that summary judgment should not have been granted on their breach of contract claim; however, the trial court did appropriately grant summary judgment on appellants' tort claims.
For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded to the trial court for further proceedings consistent with this opinion.
FORD, P.J., O'NEILL, J., concur.
[1] Although appellees indicate that appellants attached sixty-four documents to their brief in opposition to summary judgment, the record reflects that only sixty-two documents were attached.
[2] At trial, the employees of PMHA would have a complete defense to appellants' breach of contract claim as long as they were acting within the scope of their employment. See R.C. 3.12.