The STATE of Ohio, Appellee,

v.

ROUSSEAU, Appellant.

[Cite as *State v. Rousseau*, 159 Ohio App.3d 34, 2004-Ohio-5949.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 04CA008494.

Decided Nov. 10, 2004.

James M. Burge, for appellant.

John L. Reulbach Jr., for appellee.

WHITMORE, Presiding Judge.

{¶ 1} Defendant-appellant Robert Rousseau has appealed from his conviction in Elyria Municipal Court of one count of having an unlawful interest in a public contract in violation of R.C. 2921.42(A)(4). This court affirms.

I

{¶ 2} On October 16, 2003, a criminal complaint was filed in Elyria Municipal Court claiming that appellant had an unlawful interest in a public contract in violation of R.C. 2921.42(A)(4). The complaint alleged that appellant

[u]nlawfully, being a Lorain County, Ohio public official, did knowingly have an interest in the profits or benefits of a public contract entered into by or for the use of the political subdivision or governmental agency or instrumentality, to wit: County of Lorain, State of Ohio, with which he is/was connected, profited by way of a fee and/or commission from an Annual Maintenance Service Agreement between the Lorain County Board of Commissioners and Micro-Advantage, Inc.

On November 3, 2003, appellant pled not guilty to the charge.

{¶ 3} On November 13, 2003, appellant filed a motion to dismiss, claiming that the contract in question was not prohibited by R.C. 2921.42(A)(4). On December 12, 2003, the trial court overruled appellant's motion, finding that "[appellant] as a member of the Lorain County Board of Elections is clearly 'connected' with the Office of the Secretary of State, as [appellant] admits, and is also 'connected' with the County which he serves for purposes of [R.C. 2921.42]."

{¶ 4} On April 20, 2004, the state and appellant entered into the following stipulations regarding the facts of the underlying case:

1. [Appellant] was a member of the Lorain County Board of Elections during the years 2001 and 2002;

2. During this time, [appellant] acted as a sales representative for a firm known as Micro Advantage, a company which supplies computer hardware, maintenance and consulting services;

3. At this same time, [appellant] learned that the Lorain County Commissioners were seeking bids for the foregoing services for all Lorain County Offices;

4. The services requested did not apply to computer hardware, maintenance or consulting services to the Lorain County Board of Elections;

5. [Appellant] notified the owner of Micro Advantage of the bid request;

6. Micro Advantage submitted its bid and was awarded the foregoing contract by the Lorain County Commissioners;

7. [Appellant] did not take part in the presentation of the bid, nor did [appellant] participate in the contract negotiations;

8. [Appellant] did receive a commission or finder's fee for notifying Micro Advantage of the opportunity to bid on the contract; and,

9. The Lorain County Commissioners were not aware of the nature and extent of [appellant's] financial interest in the contract before it was awarded.

{¶ 5} Also on April 20, 2004, appellant changed his not-guilty plea to no-contest. The trial court accepted appellant's plea and found appellant guilty of having an unlawful interest in a public contract in violation of R.C. 2921.42.

{¶ 6} Appellant has timely appealed his conviction, asserting two assignments of error. We have consolidated his assignments of error for ease of analysis.

## II

### Assignment of Error Number One

The trial court committed prejudicial error in holding that the county in which a board of elections is located is the political subdivision, or the governmental agency or instrumentality, with which a member of the board is "connected" as this term is used in R.C. § 2921.42(A)(4).

### Assignment of Error Number Two

The trial court committed prejudicial error in holding that an elections board member is prohibited by R.C. § 2921.42(A)(4) from having an interest in a public contract to provide goods and services to the government of the county in which the board is located.

{¶ 7} In his first assignment of error, appellant argues that the trial court erred in finding him guilty because the county in which the board of elections is located is not the political subdivision or governmental agency or instrumentality with which a member of the board is "connected" as the term is used in R.C. 2921.42. Specifically, appellant has asserted that "the board of elections is not 'connected' to Lorain County except to the extent that Lorain County is the situs of its jurisdiction."

{¶ 8} In his second assignment of error, appellant argues that the trial court erred in finding that he violated R.C. 2921.42(A)(4) because a member of a county board of elections is not prohibited from having an interest in a public contract entered into by the county in which the board is located. Specifically, appellant contends that election board members are not "connected" with the local governments whose elections they conduct because election board members may serve both on the board as an "instrumentality" of the Secretary of State and they may contract in their private capacities with counties and municipalities.

{¶ 9} While appellant has listed his two assignments of error separately in his brief, both of his arguments allege that R.C. 2921.42(A)(4) does not apply to him because he is connected to the state, not the county, and therefore, his activities are not prohibited. We disagree.

{¶ 10} When a court is called to interpret a statute,

"the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact."

*State v. Hairston* (2004), 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 12, quoting *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus. Thus, absent some ambiguity, we must apply the meaning of the statute as written.

{¶ 11} R.C. 2921.42 states:

(A) No public official shall knowingly do any of the following:

* * *

(4) Have an interest in the profits or benefits of a public contract entered into by or for the use of the political subdivision or governmental agency or instrumentality with which he is connected.

R.C. 2921.42(A)(4).

{¶ 12} Appellant has not disputed that as a member of the Lorain County Board of Elections he was a "public official" under R.C. 2921.42 or that he

received a finder's fee for notifying Micro Advantage of the opportunity to bid on the contract; therefore, this court focuses on subsection (4) of R.C. 2921.42(A) and must determine whether appellant was "connected" to Lorain County.

{¶ 13} While the term "connected" as it relates to R.C. 2921.42(A)(4) is not statutorily defined or addressed in Ohio case law, the Ohio Ethics Commission has issued several advisory opinions on the matter.

{¶ 14} This court has previously used advisory opinions of the Ohio Ethics Commission to apply and interpret statutes. See *State v. Urbin*, 148 Ohio App.3d 293, 2002-Ohio-3410, 772 N.E.2d 1239. Further, the Ohio Supreme Court has held that advisory "opinions are entitled to weight by the courts" and that it is not error for a court to incorporate elements of an Ohio Ethics Commission advisory opinion into its jury instructions. *State v. Urbin*, 100 Ohio St.3d 1207, 2003-Ohio-5549, 797 N.E.2d 985, at ¶ 3–4 (Moyer, C.J., concurring).

{¶ 15} In a 1987 opinion, the Ohio Ethics Commission held:

(1) [A] member of a county board of elections is connected with the county which he serves for purposes of [R.C. 2921.42(A)(4) ]; and (2) [R.C. 2921.42(A)(4) ] prohibits a member of the county board of elections from selling property or services to the county, unless all of the criteria for the exemption of [R.C. 2921.42(C) ] are met.

Ohio Ethics Commission, Advisory Opinion No. 87–002, at 5.

{¶ 16} Responding to an inquiry as to whether a member of the county board of elections is prohibited by the Ohio Ethics Law or related statutes from selling various materials and supplies to the county, the commission found that "it is clear that a member of a county board of elections is 'connected' with the county which he serves." Id. at 3. The commission explained, "The jurisdiction of a board of elections is county-wide, and the board conducts all elections within that county. Thus, the duties of a board member are exercised on a county-wide basis." Id. As part of its reasoning, the commission stated:

A board member is compensated, based upon the population of the county which he serves, and is paid from moneys appropriated by the board of county commissioners and paid from the county treasury, as are all other expenses of the board of elections.

Id.

{¶ 17} The commission recognized that "connected" is not defined as used in R.C. 2921.42(A)(4) and found that "common usage indicates that to be 'connected with' something is to be related to, or associated with, that entity." Id. The commission went on to explain:

There is no question but that a member of a board of elections is related to, or associated with, the county which he serves through a series of significant

contacts with that county. A board member's jurisdiction, duties, appointment, compensation, and expenses are all associated with, and dependent upon, the county. Therefore, a member of a board of elections is "connected with" the county.

Id.

{¶ 18} After concluding that a member of a board of elections is connected with the county, the commission found:

[I]t necessarily follows that a board member may not have an interest in a public contract, entered into by the county, and thus may not sell services or property to the county. It is of no consequence that the board member does not propose to sell goods to the board of elections itself, since the prohibition of [R.C. 2921.42(A)(4)] prevents a public official connected with a political subdivision from contracting with the political subdivision as a whole and not just with the particular agency, board, or department of the political subdivision which he serves.

Id. at 4.

{¶ 19} In March 1992, the commission reiterated its previous findings by stating:

R.C. 2921.42(A)(4) prohibits a member of a county board of elections from having an "interest" in the sale, or a contract for the sale, of property or services to any governmental agency with which he is "connected," including the Secretary of State's Office and the county with which he serves, unless the exemption of [R.C. 2921.42(C)] is met.

Ohio Ethics Commission, Advisory Opinion No. 92–006, at 13.

{¶ 20} The commission addressed R.C. 2921.42(A)(4) again in February 1993 and affirmed its prior holding that a member of a county board of elections cannot contract to provide goods or services to the county where he serves. Ohio Ethics Commission, Advisory Opinion No. 93–004. The commission also reviewed *State ex rel. Columbus Blank Book Mfg. Co. v. Ayres* (1943), 142 Ohio St. 216, 27 O.O. 176, 51 N.E.2d 636, and found that "a careful reading of *Ayres,* discloses that the specific issue addressed by the Court was extremely narrow." Id. at 6. The commission explained that the issue in *Ayres* involved the procedure and conduct of elections and the functioning of a county board of elections as established by statute and deemed by the Constitution to be state functions; it did not deal with "the *personal conduct* of a member of a county board of elections in his pursuit of private outside business activity." (Emphasis sic.) Id. at 7. The commission held that "to espouse that the holding of [*Ayres*] stands for the proposition that members of a county board of elections are not county officers for *all* provisions of the Revised Code sweeps too broadly." (Emphasis sic.) Id. at 8.

{¶ 21} To clarify its position that a member of a county board of elections is connected with the county where he serves for purposes of R.C. 2921.42(A)(4), the commission listed the following factors:

(1) [A] board of elections exercises its jurisdiction and duties on a county-wide basis; (2) the Secretary of State is compelled to appoint the nominee of the county executive committee of the political party entitled to the appointment, unless he believes the nominee would not be competent to serve; (3) the members of a county board of elections receive compensation which is determined by the population of the county where they serve; (4) the board of county commissioners pays the board member's compensation and the board's expenses from the county treasury; and (5) the board of county commissioners has the power to veto the actions of the board of elections in choosing suitable office space. In addition, it should be noted that the county prosecutor is the legal advisor of a county board of elections. * * * Furthermore, the Attorney General has held that board of elections personnel are "employed in offices of the county service" for purposes of [statutes relating to sick leave and] "even though the employees of the boards of elections perform functions established by State law, there is no other legal or factual basis for distinguishing them from other county employees."

Id. at 7–8, quoting Ohio Atty.Gen.Op. No. 88–091.

{¶ 22} This court is persuaded by the commission's finding that the common usage of "connected" should be applied to R.C. 2921.42(A)(4). We agree with the commission that as a member of the board of elections, appellant has jurisdiction, duties, actions, and compensation that certainly connect, i.e., relate or associate, him to the county of that board of elections. Based on our history of using advisory opinions to apply and interpret statutes, Justice Moyer's authorization to give such opinions weight, and the sound determination of the commission on this issue, this court adopts the commission's consistent holding that for purposes of R.C. 2921.42(A)(4), a member of a county board of elections is connected with the county with which the board of elections serves.

{¶ 23} This court is not persuaded by appellant's argument that several Ohio Attorney General opinions support his claim that as a member of the Lorain County Board of Elections he is allowed to have an interest in contracts within Lorain County. We agree with the trial court that the Ohio Attorney General opinions are distinguishable from the case at hand because the opinions addressed incompatible offices and this case involves having an interest in a public contract. Further, such opinions are not binding on this court. Accordingly, we decline appellant's request that we apply the Ohio Attorney General's opinions on incompatible offices to this case.

{¶ 24} This court also declines to accept appellant's assertion that *Ayres* requires this court to reverse his conviction. In *Ayres*, which the commission discussed in Advisory Opinion No. 93–004, the Columbus Blank Book Manufacturing Company sought a writ of mandamus compelling a county auditor to pay, as requested by the county's board of elections, for election materials that the company had provided. The auditor refused to issue warrants to the county treasurer to pay the company. The auditor alleged that the members of the board of elections were county officers and as such had been required to follow G.C. 5625–33's procedural requirements of attaching a certificate of a fiscal officer that essential funds were available to pay for the goods. The *Ayres* court held that

> under the Constitution and the statutes passed pursuant thereto all matters pertaining to the conduct of elections are state functions; that members of boards of elections perform no county functions and are not county officers; and that contracts entered into by boards of elections pursuant to Section 4785–13, General Code, do not come within the provisions of Section 5625–33(d), General Code.

*Ayres*, 142 Ohio St. at 223, 27 O.O. 176, 51 N.E.2d 636.

{¶ 25} This court rejects appellant's argument that *Ayres* requires that appellant's conviction be reversed. We find *Ayres* not applicable to the case sub judice. First, as the commission noted, *Ayres* is factually distinguishable from the case at hand; *Ayres* dealt with whether a member of the county board of elections could order election supplies from a company without first getting permission from the county, not whether the member could order the supplies from a company he worked for or in which he had an interest. Second, the *Ayres* court determined that members of the county board of elections were not county officers and did not perform county functions; it did not determine whether such people were "connected" to the county. Further, R.C. 2921.42, the statute under which appellant was convicted, did not come into effect until 1974, 30 years after *Ayres*, and thus was clearly not considered by the *Ayres* court. Accordingly, this court finds that *Ayres* is not relevant to the instant matter.

{¶ 26} Based on the foregoing, this court cannot find that the trial court erred when it found that appellant is connected to the county with which he is a member of the board of elections. Specifically, the trial court did not err when it determined that the county in which appellant is a member of the board of elections is the political subdivision or governmental agency or instrumentality with which appellant is connected or when it determined that appellant is prohibited by R.C. 2921.42(A)(4) from having an interest in a public contract to provide goods or services to the government of the county in which appellant is a

member of the board of elections. Therefore, appellant's first and second assignments of error are not well taken.

## III

{¶ 27} Appellant's two assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

BOYLE, J., concurs.

SLABY, J., concurs in judgment only.