The STATE ex rel. DREAMER et al.,

v.

MASON, Pros. Atty., et al.

[Cite as *State ex rel. Dreamer v. Mason,* 189 Ohio App.3d 420, 2010-Ohio-4110.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93949.

Decided Sept. 2, 2010.

See also,   2007-Ohio-271, 2007 WL 178928 and 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510.

422

Synenberg & Associates, L.L.C., Roger M. Synenberg, and Dominic J. Coletta, for relator Kathleen Dreamer.

Argie, D'Amico & Vitantonio, and Dominic J. Vitantonio, for relator Rosie Grier.

Rotatori Bender Co., L.P.A., Robert J. Rotatori, and Richard L. Stoper Jr., for relator Jacqueline Maiden.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan Jr. and Lisa Reitz Williamson, Assistant Prosecuting Attorneys, for respondents.

---

JAMES J. SWEENEY, Judge.

{¶ 1} Relators, Kathleen Dreamer, Rosie Grier, and Jacqueline Maiden, filed a complaint for a writ of mandamus against respondents, the Cuyahoga County prosecuting attorney and the Cuyahoga County Board of Commissioners.

{¶ 2} In 2004, Dreamer, Grier, and Maiden were employees of the Cuyahoga County Board of Elections ("BOE"). After the 2004 general election, the BOE was requested to perform a recount of votes in the presidential race. At the time of the recount, Maiden was the elections coordinator, Dreamer was the manager of the ballot department, and Grier was the assistant manager of the ballot department. According to the director of the BOE, Michael Vu, the BOE staff was advised by the prosecutor's office to conduct the recount using the same procedures they had used in past recounts.

{¶ 3} In December 2004, the BOE met to certify the results of the recount. During that meeting, information was disclosed suggesting that the BOE had not conducted the recount in accordance with Ohio law. In January 2005, the Green and Libertarian parties requested that respondent, the prosecuting attorney for Cuyahoga County, William Mason ("the prosecutor"), to investigate. Because of his statutory obligation to represent the BOE, the prosecutor recused himself from any investigation of the 2004 recount. Ultimately, the Cuyahoga County Court of Common Pleas appointed Erie County prosecuting attorney, Kevin Baxter, as special counsel in the matter.

{¶ 4} In August 2005, an assistant prosecuting attorney informed the BOE that subpoenas were being issued to the BOE staff. Director Vu of the BOE asked that the prosecutor request special counsel to provide legal assistance, at a

minimum, to explain the grand-jury process to those receiving subpoenas. The prosecutor did not provide any further legal counsel to the BOE or relators on any matter regarding the recount and did not apply for the appointment of independent counsel.

{¶ 5} Relators were indicted for election-law violations in 2005 and 2006. The propriety of these charges is not before this court in this mandamus action. Rather, it is the statutory right to legal representation under R.C. 309.09(A) and 305.14(A) that is involved.

{¶ 6} After relators were indicted, they obtained their own independent counsel. Counsel for Dreamer repeatedly asked the BOE to ask respondents to apply to the court of common pleas to authorize respondent Cuyahoga County Board of Commissioners ("the commissioners") to employ him as legal counsel for relators. Maiden's counsel also requested that the BOE apply to the court to authorize the commissioners to pay Maiden's legal fees.

{¶ 7} The BOE intended to seek the appointment of independent counsel for relators because it believed that the indictments were the direct result of the employees performing their official duties during the recount of the 2004 presidential election. Despite several requests by the BOE to the prosecutor and the commissioners, respondents did not apply to the court of common pleas for the appointment of independent counsel to represent relators. Respondents contend that because relators were indicted on criminal charges for violating Ohio election laws, the prosecutor could readily find that relators' conduct did not constitute a well-intended attempt to perform an official duty. We disagree.

{¶ 8} Relators have submitted affidavits attesting that BOE members, during two executive sessions, unanimously committed and agreed that the BOE would pay relators' legal fees and expenses if they were not convicted of any criminal conduct. It is also averred that an assistant county prosecutor informed BOE members that the county would pay the indicted employees' legal fees only if they were found not guilty. It is clear that relators have relied on these representations in obtaining independent legal counsel in the criminal proceedings without further pursuing the appointment of counsel.

{¶ 9} Relators filed this action in mandamus on September 18, 2009, requesting that this court order (1) respondents to make application to the Cuyahoga County Court of Common Pleas for the retroactive appointment of independent counsel or, in the alternative, the court to appoint counsel for relators directly and (2) the commissioners to pay relators' legal expenses incurred by defending themselves against the criminal charges. Relators also request postjudgment interest, attorney fees and costs, and other appropriate relief.

{¶ 10} Respondents filed a summary-judgment motion, arguing that for a variety of reasons, relators' writ of mandamus should be denied. After reviewing the facts of the case and the law, we deny respondents' summary-judgment motion and grant the relief requested in the complaint.

{¶ 11} In order for this court to issue a writ of mandamus, relators must establish that they have a clear legal right to the requested relief, respondents have a clear legal duty to perform the requested relief, and there is no adequate remedy at law. *State ex rel. Eshleman v. Fornshell,* 125 Ohio St.3d 1, 2010-Ohio-1175, 925 N.E.2d 609, ¶ 20. Moreover, mandamus is an extraordinary remedy that is to be exercised with caution and only when the right is clear. *State ex rel. Williams v. Brown* (1977), 52 Ohio St.2d 13, 15, 6 O.O.3d 79, 368 N.E.2d 838.

I

{¶ 12} R.C. 309.09(A) confers upon the prosecuting attorney the following responsibilities: "The *prosecuting attorney shall be the legal adviser of* the board of county commissioners, board of elections, and all other *county officers* and boards * * *. The *prosecuting attorney shall* prosecute and *defend all suits and actions which any such officer or board directs or to which it is a party,* and no county officer may employ any other counsel or attorney at the expense of the county, except as provided in section 305.14 of the Revised Code." (Emphasis added.) R.C. 309.09(A).

{¶ 13} R.C. 305.14(A), to which R.C. 309.09(A) refers, sets forth the procedure by which legal counsel other than the prosecuting attorney may be hired to advise or represent a county board or officer at the county's expense. The statute provides as follows: "The court of common pleas, *upon the application of the prosecuting attorney and the board of county commissioners,* may authorize the board to employ legal counsel to assist the prosecuting attorney, the board, or any other county officer in any matter of public business coming before such board or officer, and in the prosecution or defense of any action or proceeding in which such board or officer is a party or has an interest, in its official capacity." (Emphasis added.) R.C. 305.14(A).

{¶ 14} It is undisputed in the instant case that respondents failed to apply for authorization of independent counsel for relators. We now turn to whether respondents' failure to make the application on relators' behalf entitles relators to relief in mandamus.

{¶ 15} At the onset of this action, relators and respondents proceeded under the presumption that relators were county officers entitled to legal representation at the county's expense. At this court's request, the parties briefed the issue

whether relators were county officers in light of *State ex rel. Columbus Blank Book Mfg. Co. v. Ayres* (1943), 142 Ohio St. 216, 27 O.O. 176, 51 N.E.2d 636. After review, we distinguish *Ayres* and hold that under the plain language of R.C. 309.09(A) and 305.14(A), relators should have been considered county officers.

{¶ 16} In *Ayres,* the Ohio Supreme Court considered the issue whether members of a county board of elections were answerable to the county auditor or the secretary of state regarding the payment procedure for "pollbooks and tally sheets which were used in the [1941] general election." Id. at 217, 27 O.O. 176, 51 N.E.2d 636. Although the *Ayres* court determined that members of a county board of elections perform state, rather than county, functions, *Ayres* is distinguishable from the instant case for the following reasons: *Ayres* concerned board members, while this case concerns individuals who worked for the board, and *Ayres* was decided in 1943, ten years before R.C. 309.09 and 305.14 were enacted in 1953. Thus, the *Ayres* court did not consider these statutes in reaching its conclusion. See also *State v. Rousseau,* 159 Ohio App.3d 34, 2004-Ohio-5949, 822 N.E.2d 847, ¶ 20, quoting Ohio Ethics Commission, Advisory Opinion No. 93–004 ("'to espouse that the holding of [*Ayres*] stands for the proposition that members of a county board of elections are not county officers for all provisions of the Revised Code sweeps too broadly'" [emphasis omitted]).

{¶ 17} The first element that relators must establish in a mandamus action is that they have a right to relief. It is clear that relators are not entitled to representation by the prosecutor's office under R.C. 309.09, because of the conflict of interest inherent in concurrently defending a party and prosecuting that same party. Relators argue that they are entitled to representation under R.C. 305.14, which allows appointment of, and payment for, outside counsel under the following circumstances: "The court of common pleas, upon the application of the prosecuting attorney and the board of county commissioners, may authorize the board to employ legal counsel to assist * * * any other county officer * * * in the defense of any action or proceeding in which such * * * officer is a party or has an interest, in its official capacity." R.C. 305.14(A).

{¶ 18} The term "county officer" is not defined in R.C. 305.14 or 309.09. "Unless words are otherwise defined or a contrary intent is clearly expressed, we give words in a statute their plain and ordinary meaning." *Cincinnati Metro. Hous. Auth. v. Morgan,* 104 Ohio St.3d 445, 2004-Ohio-6554, 820 N.E.2d 315, ¶ 6. Black's Law Dictionary (7th Ed.1999) 1113, defines "county officer" as follows: "An officer whose authority and jurisdiction are confined to the limits of the county served." In the public arena, an "officer" is "a person holding public office under a national, state, or local government, and authorized by that government to exercise some specific function." Id. See also *State ex rel. Attorney Gen. v. Brennan* (1892), 49 Ohio St. 33, 38–39, 29 N.E. 593 (holding that

when "a person is clothed * * * with public functions to be exercised in the supposed interest of the people * * * and where such duties are wholly performed within the limits of a county, * * * the person lawfully filling such place is necessarily a county officer"); *Leber v. Smith* (1994), 70 Ohio St.3d 548, 555, 639 N.E.2d 1159 (Douglas, J., concurring), quoting Black's Law Dictionary (6th Ed.1990) 351 (recognizing "county officers" as " '[t]hose whose general authority and jurisdiction are confined within the limits of the county in which they are appointed, who are appointed in and for a particular county, and whose duties apply only to that county, and through whom the county performs its usual political functions' ").

{¶ 19} Under R.C. Title 35 and the authority of the Ohio secretary of state, the BOE was directed to conduct a recount of Cuyahoga County ballots in the 2004 presidential race at the request of the Green and Libertarian parties. The recount was conducted on December 16 and 17, 2004, before witnesses from each political party. On December 22, 2004, the BOE certified the results of the recount. Relators allege, and respondents do not dispute, the following facts regarding relators' roles during the recount of the 2004 presidential election.

{¶ 20} Relators were appointed to their positions at the BOE pursuant to R.C. 3501.11(D). Relators' official job duties involved conducting local, state, and national elections solely within, and for the citizens of, Cuyahoga County. Relators were compensated solely from the Cuyahoga County budget.

{¶ 21} Relator Maiden was the elections coordinator, which is the third highest ranking administrator at the BOE, behind the director and deputy director. Relator Maiden was present at all BOE meetings, and she was in charge of training the BOE staff for the election as well as the recount.

{¶ 22} Dreamer was the ballot-department manager and relator Grier was the ballot-department assistant manager; Dreamer and Grier were the two individuals responsible for conducting the recount. They also helped train staff and conducted county elections.

{¶ 23} Relators conducted the recount using procedures that were reviewed and approved by the prosecutor's office.

{¶ 24} We find that relators were "county officers" for the purposes of R.C. 309.09 and 305.14. Relators were responsible for ensuring the accuracy of Cuyahoga County's role in a disputed national election. The performance of such an act is the sine qua non of the operation and continuing existence of a democratic government. Obviously, the members of the BOE require the assistance of many individuals in carrying out their mission and, in particular, to plan and administer the elections process. At all times, relators were authorized by the government to perform a specific function, namely, the recount. They

attempted to perform their official duties or responsibilities in good faith and in a well-intended manner, under close scrutiny, and in the presence of observers representing the public. This resulted in relators being named defendants, in their official capacity at the BOE, in actions alleging elections-law violations. Under R.C. 305.14(A), relators are entitled to representation to assist them in defending these actions.

{¶ 25} Relators have established a clear legal right to relief in mandamus.

## II

{¶ 26} We turn our discussion to whether respondents have a clear legal duty to perform relators' requested relief, i.e., to make an application for the appointment of outside counsel and payment of attorney fees. Pursuant to R.C. 309.09(A) and 305.14(A), in order for a county officer to employ other counsel to represent her at the expense of the county, the prosecuting attorney and the board of county commissioners must apply to the court of common pleas. Further, R.C. 305.17 requires the board of county commissioners to "fix the compensation of all persons appointed or employed under [R.C. 305.14], which with their reasonable expenses, shall be paid from the county treasury upon the allowance of the board."

{¶ 27} In this case, respondents did not file a joint application for the appointment of other counsel as set forth in R.C. 305.14(A). In light of respondents' failure to do so, relators were required to hire their own independent counsel. The record is clear that relators did not delay in asking the BOE several times to seek appointment of independent counsel. Relators and the BOE's requests, however, were unsuccessful.

{¶ 28} A prosecuting attorney's duty in relation to county officers and boards is twofold under R.C. 309.09(A): first, the prosecutor "shall be the legal advisor of * * * county officers and boards * * * in matters connected with their official duties"; and second, the prosecutor "shall prosecute and defend all suits and actions which any such officer or board directs or to which it is a party."[1] See

---

1. The parties dispute whether a county officer has a clear legal right to criminal defense counsel. We observe that the applicable statutes do not distinguish between civil and criminal matters and, therefore, allow for the appointment of outside counsel at county expense for the "defense of any action or proceeding in which such board or officer is a party or has an interest, in its official capacity." R.C. 305.14(A). Ordinarily, criminal conduct does not arise in the scope of a county official's duties. However, we view as persuasive authority the attorney general's determination that the entitlement to legal counsel at county expense extends to county officials engaging in a good faith, well-intended attempt to perform official duties or responsibilities that result in criminal charges. 1990 Ohio Atty.Gen.Ops. No. 90–096. This is a case-by-case determination that requires close consideration of the specific factual circumstances of the county officer's conduct. See id.

also *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 465, 20 O.O.3d 388, 423 N.E.2d 105.

{¶ 29} The Ohio Attorney General's Office has found that inherent in the prosecutor's duty to advise and represent is a basic determination that the officer or board member attempted to perform his or her official duties in good faith and a well-intended manner. 1990 Atty.Gen.Ops. No. 90–096. "It cannot be said, therefore, that there is ever found * * * a duty to defend as we normally understand that term. It would be more appropriate to say that the prosecuting attorney in such a case is under a duty to make a careful evaluation of such facts and circumstances and is then authorized to defend the officer concerned if such evaluation indicates that there is involved a well intentioned attempt to perform an official duty on the part of the defendant." 1954 Ohio Atty.Gen.Ops. No. 4567 at 574. Therefore, under R.C. 309.09, representation of a county officer is at the prosecutor's discretion, insomuch as the prosecutor must make the good-faith, well-intended determination.

{¶ 30} R.C. 309.09 also prevents anyone but the prosecutor from representing a county officer except as provided in R.C. 305.14; therefore, other counsel ordinarily should not be appointed unless a proper application has been filed pursuant to R.C. 305.14. *Seminatore*, 66 Ohio St.2d at 462–463, 20 O.O.3d 388, 423 N.E.2d 105; *State ex rel. Stamps v. Automatic Data Processing Bd. of Montgomery Cty.* (1989), 42 Ohio St.3d 164, 167, 538 N.E.2d 105. "Application by the prosecuting attorney ordinarily is necessary because the counsel being appointed will fulfill a duty otherwise imposed by law upon the prosecuting attorney. Application by the board of county commissioners is necessary because it is that board which not only must fix the compensation to be paid for the person so appointed but also must provide the necessary funds for that purpose." *Seminatore* at 463, 20 O.O.3d 388, 423 N.E.2d 105.

{¶ 31} However, courts have carved out an exception to the rule mandating a proper application under R.C. 305.14 before authorization of outside counsel. When the prosecuting attorney has a conflict of interest and fails to apply for the appointment of outside counsel when there is a duty to defend, "this joint application is not a prerequisite to a trial court's authorization of outside counsel." *State ex rel. Trumbull Cty. Bd. of Elections v. Trumbull Cty. Bd. of Commrs.*, Trumbull App. No. 2009 TR 85, 2010-Ohio-2281, 2010 WL 2026075, at ¶ 21. In *Seminatore*, the Ohio Supreme Court held that the prosecutor's or board of commissioners' failure to make this application when a conflict of interest exists constitutes an abuse of discretion, and mandamus is an appropriate remedy to compel action. *Seminatore* at 463–464, 20 O.O.3d 388, 423 N.E.2d 105. In such circumstances, the joint application may be ordered, or a court of common pleas may directly appoint legal counsel to represent the county officer.

*State ex rel. Jefferson Cty. Children Servs. Bd. v. Hallock* (1986), 28 Ohio St.3d 179, 182–183, 28 OBR 269, 502 N.E.2d 1036; *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Commrs.* (1994), 70 Ohio St.3d 94, 637 N.E.2d 311.

{¶ 32} Our analysis of R.C. 305.14 does not end, however, with compelling or bypassing the joint application to the trial court. A prosecutor is authorized to advise or represent a county officer pursuant to R.C. 309.09(A) after the good-faith and well-intended determination is reached. It follows then, that to authorize outside counsel to advise or represent a county officer, that same good-faith and well-intended evaluation must take place. Common sense dictates that a party other than a prosecutor with a conflict of interest should make this determination. In interpreting R.C. 305.14(A), we find that the General Assembly intended the court to play this role. "The court of common pleas * * * *may authorize* the board [of commissioners] to employ legal counsel to assist * * * [a] county officer in any matter of public business * * * and in the prosecution or defense of any action * * * in which * * * [the] officer is a party or has an interest, in its official capacity." (Emphasis added.) R.C. 305.14(A). Therefore, under R.C. 305.14(A), authorization of outside counsel when a conflict of interest exists is at the court's discretion, insomuch as the court must make a good-faith, well-intended determination.

{¶ 33} In the instant case, it is uncontroverted that a conflict of interest exists and that neither the prosecutor nor the commissioners filed an application under R.C. 305.14 to appoint separate counsel for relators; consequently, counsel was not appointed by the court. As a result, relators retained their own independent counsel, relying on the representations of the BOE that relators' attorney fees would be paid for if the charges against relators did not result in convictions. Additionally, there is evidence in the record alleging that an assistant county prosecutor told the BOE that "the county would only pay the indicted employees' legal fees if they were found not guilty."

{¶ 34} We do not go so far as to find that pursuant to R.C. 305.14(A), the prosecutor and board of commissioners automatically have a duty to file an application in the trial court when a conflict of interest exists. Rather, we follow the Ohio Supreme Court's guidance on this issue, and hold that failure to make the application pursuant to R.C. 305.14(A), under the facts of the instant case, constitutes an abuse of discretion. See *Stamps,* 42 Ohio St.3d at 167, 538 N.E.2d 105 (holding that "the *Seminatore* court did not find that the prosecutor and board of county commissioners had a *duty* to apply for appointment of special counsel under the statute. * * * Thus, while it does not find a duty on the prosecutor's part, *Seminatore* does recognize mandamus as a means to compel an application for special counsel where an abuse of discretion has been shown" [emphasis sic]).

{¶ 35} Respondents have a clear legal duty under R.C. 305.14(A) to make an application for the appointment of legal counsel for relators and the payment of relator's legal expenses unique to the exceptional facts and circumstances in the instant case. We stress that the following factors were considered in our analysis: the prosecutor abused his discretion in failing to make the application; relators relied on the BOE's and the prosecutor's office's representations that the county would pay their legal fees; the prosecutor's office allegedly led the commissioners to believe that they could not make the application unilaterally and that relators were not entitled to appointed counsel; and the BOE publicly supported relators, essentially stating that they acted in good faith and a well-intended manner when performing their official job duties.

{¶ 36} Additionally, we find that relators have established that they have no adequate remedy at law, thus entitling them to relief in mandamus. See *Seminatore*, 66 Ohio St.2d at 463–464, 20 O.O.3d 388, 423 N.E.2d 105 (holding that when "the prosecuting attorney * * * refuses to afford counsel to a county board in defense of an action * * *, mandamus would be an appropriate remedy").

## III

{¶ 37} Having determined that relators established the prerequisites of mandamus relief, we now turn to the timeliness of this action. Ohio case law holds that "[a]n application for a writ of mandamus must be made within a reasonable time after the alleged wrongful act occurred." *State ex rel. Madden v. Windham Exempted Village School Dist.* (1989), 42 Ohio St.3d 86, 90–91, 537 N.E.2d 646. Laches will preclude a mandamus action if the party asserting the defense shows it has been materially prejudiced by an unreasonable and inexcusable delay, although "prejudice will not be inferred from a mere lapse of time." Id., citing *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113.

{¶ 38} Between August 2005 and February 2006, relators were indicted for election-law violations, and the final substantive proceedings in the matters occurred on September 30, 2008, without any convictions of guilt. Just shy of one year later, on September 18, 2009, relators filed this mandamus action.

{¶ 39} Respondents' wrongful act, specifically, their failure to make a joint application in the court of common pleas for appointment of outside counsel and payment of legal fees, was ongoing throughout this litigation. For example, the former director of the BOE orally requested the prosecutor's advice on legal issues in this case on August 15, 2005, and made the same request in writing on August 17, 2005. The prosecutor refused to meet with the BOE on August 16, 2005, and recused himself from the case on August 18, 2005. On April 5, April

17, and July 16, 2006, the attorneys for Dreamer and Maiden sent letters requesting the BOE to petition respondents to make an application under R.C. 305.14(A). In response, the BOE requested that the prosecutor make a joint application. However, no action was taken. The BOE also requested that the commissioners make the application unilaterally; however, the prosecutor's office advised the commissioners that they did not have authority to do this and were not entitled to relief. The attorney for Dreamer again asked the BOE to take action on November 28, 2006. At all times, the prosecutor either failed or flatly refused to act.

{¶ 40} In opposition to the instant writ, respondents argue that "the alleged wrongful act occurred as early as August 2005" and at the latest "by the time the indictments were returned against the relators." However, as discussed above, the wrongful act was ongoing and thus occurred far beyond the dates of the indictments. Cf. *Ohio Civ. Rights Comm. v. Triangle Real Estate Servs., Inc.*, Franklin App. No. 06AP–157, 2007-Ohio-1809, 2007 WL 1125842, at ¶ 22 (recognizing that "a continuing [wrongful] practice, rather than an isolated incident of wrongful conduct," will act to start the running of a statute of limitations from the most recent time the conduct occurred).

{¶ 41} Respondents further argue that relators "did nothing to secure the appointment of outside counsel." This argument lacks merit because relators requested action under R.C. 305.14 multiple times both before and during litigation.

{¶ 42} Respondents' final argument that this writ should be time-barred is that granting the writ now would be materially prejudicial, because respondents and county taxpayers "should not have to pay for exorbitant legal fees for which they did not agree to be bound and over which they had no supervisory or fiscal control."

{¶ 43} This argument is not well taken, because R.C. 305.17 gives the commissioners the power to "fix the compensation" of relators' appointed counsel. In other words, the commissioners have fiscal control over the amount of legal expenses the county may bear under R.C. 305.14(A). Additionally, respondents are not required to "agree" to the appointment or payment of fees; rather, because of the prosecutor's conflict of interest, "the court of common pleas possessed jurisdiction to authorize the employment of outside counsel pursuant to R.C. 305.14 without the acquiescence of the county prosecutor." *Hallock*, 28 Ohio St.3d at 181–182, 28 OBR 269, 502 N.E.2d 1036.

{¶ 44} We are aware of a line of opinions from the attorney general that advises that R.C. 309.09 and 305.14 do not authorize "the reimbursement of county officers who have, on their own initiative, employed private legal counsel,

* * * for expenses incurred in a legal action which is no longer pending." 1988 Ohio Att.Gen.Ops. No. 88–055; 1990 Ohio Ops.Atty.Gen. 90–096. Although not binding on this court, attorney-general opinions are persuasive authority. *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438. Nonetheless, we conclude that the instant case can be factually distinguished from the advisory opinions cited.

{¶ 45} The advisory opinions determined that reimbursement was not authorized when counsel was hired outside the procedures specified in R.C. 305.14. In 1988, Ohio Atty.Gen.Ops. No. 88–055, the attorney general opined that the word "employ," as found in R.C. 305.14, contemplates present or prospective action; the word "reimburse," on the other hand, contemplates fees already expended. This distinction is important, according to the attorney general, because "the county *was not given the opportunity* to provide a defense * * * while the case was pending." (Emphasis added.)

{¶ 46} In the instant case, relators did not hire independent counsel merely on their own initiative. Relators relied on continuous support and representations from the BOE that their legal fees would be paid. Additionally, relators petitioned the BOE, who, in turn, petitioned respondents to apply for the appointment. In the end, the county refused to provide relators with advice, and respondents refused to make the appropriate application under R.C. 305.14.

{¶ 47} The attorney general implied that he might reach a different conclusion in cases—such as the one before us—in which the prosecutor abused his discretion by failing to file an application for appointment. "In reaching this conclusion I wish to emphasize that I am not expressing the opinion that the situation here presented is one in which the prosecuting attorney and the board of county commissioners *should have filed* an application pursuant to R.C. 305.14(A) for authorization to hire private legal counsel." (Emphasis added.) 1990 Ohio Atty.Gen.Ops. No. 90–096.

{¶ 48} We also recognize that reimbursement of legal fees has been permitted in circumstances when R.C. 305.14(A) approval for the appointment of counsel is obtained while the underlying budget dispute was pending. *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 65, 734 N.E.2d 811. See also *Seminatore,* 66 Ohio St.2d at 465, 20 O.O.3d 388, 423 N.E.2d 105 (stating that R.C. 304.15(A) confers upon the court the power to authorize outside counsel appointments for public officers "in a pending action where to do so is in the best interests of the county").

{¶ 49} While we acknowledge that the idea of a "pending" legal action was contemplated by the Ohio Supreme Court in *Wilke* and *Seminatore,* we find these references incidental to the propositions of law for which these cases stand. In reaching this conclusion, we take into consideration that the word "pending" is

used once in the *Seminatore* opinion and, although "pending" is used four times in the *Wilke* opinion, it is not used at all in the court's discussion of legal expenses under R.C. 305.14. Notably, neither case involved the reliance on assurances of reimbursement that we must consider here.

{¶ 50} It is inconsistent for respondents to stand in the way of proper procedural performance under R.C. 305.14(A) while arguing that relators' writ of mandamus must fail because the particulars of R.C. 305.14(A) were not followed. See *Barrett v. Picker Internatl., Inc.* (1990), 68 Ohio App.3d 820, 826, 589 N.E.2d 1372 (holding that "plaintiffs' status as third-party beneficiaries cannot be used as both a sword to reap the benefits * * * and a shield to protect them").

{¶ 51} Thus, in conclusion, we hold that under the limited circumstances of the instant case, relators are entitled to relief in mandamus. As the Eleventh District Court of Appeals of Ohio held in *State ex rel. Latell v. Watkins* (Dec. 4, 1987), Trumbull App. No. 3905, 1987 WL 26685, "we are not oblivious to the unique and special factors presented in this case * * * [and] judgment with this writ of mandamus is expressly limited to the facts before us."

{¶ 52} Respondents are ordered to make an application to the court of common pleas pursuant to R.C. 305.14(A). The court of common pleas, upon finding that relators acted in good faith and a well-intended manner in performing their official job duties, may authorize retroactive appointment of counsel and reimbursement of legal expenses in an amount fixed by the commissioners.

{¶ 53} We, therefore, grant relief in mandamus. Respondents' motion for summary judgment is denied.

Motion denied.

KILBANE, J., concurs.

GALLAGHER, A.J., dissents with separate opinion.

SEAN C. GALLAGHER, Administrative Judge, dissenting.

{¶ 54} I respectfully dissent from the majority opinion. While I empathize with the position in which relators were placed and do not fully condone the actions of the prosecutor's office, I do not believe relators are entitled to mandamus relief under existing law.

{¶ 55} In order for relators to establish a clear legal right to have legal counsel appointed at the expense of the county, they must show that they are entitled to this relief under the applicable statutes. R.C. 309.09(A) requires the prosecuting attorney to defend all actions to which a county officer is a party and explicitly states that other counsel may not be employed at county expense "except as provided in section 305.14 of the Revised Code." Thus, the inquiry is twofold: (1)

were relators county officers, and (2) did they follow the statutorily required procedure to have counsel appointed at county expense?

{¶ 56} Although the parties did not specifically raise the county-officer issue in their initial briefs to this court, there is no doubt that this court cannot issue mandamus relief when a legal right does not exist. Relators have the burden of proving their entitlement to the requested extraordinary relief in mandamus, and this burden cannot be waived.

{¶ 57} Relators were Cuyahoga County Board of Elections ("BOE") employees who were acting as election officials during the recount of the 2004 presidential race. The record reflects that they were placed in a position of trust, were performing duties in furtherance of the public interest, and exhibited other characteristics of county officers. However, relators cite no controlling legal authority to support their position that they were in fact county officers.

{¶ 58} Relators rely upon certain definitions of "county officers" in support of their argument. *State ex rel. Attorney Gen. v. Brennan* (1892), 49 Ohio St. 33, 38–39, 29 N.E. 593, was decided at a time when all county officers were elected officials. The discussion in the concurring opinion in *Leber v. Smith* (1994), 70 Ohio St.3d 548, 554–556, 639 N.E.2d 1159 (Douglas, J., concurring), concerning the plain meaning of the words as defined in Black's Law Dictionary was in relation to a county sheriff, who is considered a county officer under statutory provisions providing for the salaries and compensation of county officers, R.C. 325.02 and R.C. 325.06. Also, the Ohio Attorney General opinions have remained limited to deputy sheriffs and volunteer deputy sheriffs. See 1980 Ohio Atty.Gen. Ops. No. 76 and 1973 Ohio Atty.Gen.Ops. No. 73–055.

{¶ 59} It must be recognized that the county boards of elections are of statutory creation. The authority of a county board of elections and the performance of duties by its members are governed by applicable statutory requirements. See *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 11. The secretary of state has authority over the county boards of elections. R.C. 3501.05. The secretary of state has authority to issue directives and advisories to the various boards of elections and to compel election officials to observe the requirements of the law. R.C. 3501.05(B) and (M). Members of each county board of elections are appointed by the secretary of state, and the members and employees of the board of elections are subject to dismissal by the secretary of state. R.C. 3501.06, 3501.16. R.C. 3501.01(U)(6) defines employees of the board of elections as election officers. Significantly, R.C. 3501.14 explicitly states that "employees of the board [of elections] are not public officers."

{¶ 60} In *State ex rel. Columbus Blank Book Mfg. Co. v. Ayres* (1943), 142 Ohio St. 216, 27 O.O. 176, 51 N.E.2d 636, the Ohio Supreme Court held that "all

matters pertaining to the conduct of elections are state functions" and that "[m]embers of the boards of elections act under the direct control of and are answerable only to the Secretary of State in his capacity as the chief election officer of the state. They perform no county functions and *are not county officers.*" (Emphasis added.) Id. at paragraphs one and two of the syllabus. The court found nothing to indicate any legislative intent to make the members of the boards of elections county officers. Id. at 220, 27 O.O. 176, 51 N.E.2d 636; see also *State ex rel. Moss v. Franklin Cty. Bd. of Elections* (1980), 69 Ohio App.2d 115, 117, 432 N.E.2d 210 (recognizing that a board of elections is not a political subdivision and its members are not county officers).

{¶ 61} Although R.C. 309.09 and 305.14 were not enacted at the time *Ayres* was decided, the Ohio Supreme Court's decision is clearly on point. Employees, like members, of the board of elections are under the control of the secretary of state and are performing state functions in the conduct of elections. Because relators' authority was under the directive of a state official and because they were performing state functions, I do not agree with the majority's conclusion that they are county officers under the plain meaning of the term.

{¶ 62} There is no question that a county board of elections has some connection with the county in which it is situated. The expenses of the board of elections are paid from appropriations by the board of commissioners of the county, and compensation of board of elections employees is paid in the same manner as other county expenses are paid. R.C. 3501.17. Board of elections employees may also be afforded county health-insurance coverage. R.C. 305.171.[2] Thus, at best, members and employees of a county board of elections have been considered to be "connected with the county" in certain respects. See *State v. Rousseau,* 159 Ohio App.3d 34, 2004-Ohio-5949, 822 N.E.2d 847. However, there remains no clear legal authority for considering an employee of a board of elections as a "county officer."

{¶ 63} I acknowledge the critical role of the board of elections in effecting and preserving the democratic process. The record supports relators' claim that they were acting in their official capacity for the BOE and were performing their duties or responsibilities in a good faith, well-intended manner and in furtherance of the election process. Relators make a compelling argument for their being included among the "county officers" for purposes of R.C. 309.09(A) and 305.14(A). As discussed above, however, there is no controlling legal authority in

---

2. Importantly, R.C. 305.171(J) specifically defines "county officer or employee" for purposes of that section to include "a member or employee of the county board of elections." This would suggest that unless otherwise defined, they are not considered county officers or employees. Also, R.C. 309.09(A) specifically lists the "board of elections" apart from "other county officers and boards," suggesting a distinction.

support of their argument. The General Assembly may, therefore, wish to consider clarifying the definition and scope of the term "county officers" for purposes of R.C. 309.09(A) and 305.14(A) in order to prevent future controversies.

{¶ 64} Even if it is presumed, for the sake of argument, that relators were county officers, they still fail to demonstrate that they have a clear legal right to the relief requested and that respondents have a clear duty to provide that relief. R.C. 305.14(A), to which R.C. 309.09(A) refers, sets forth the procedure that must be followed in order for legal counsel, other than the prosecuting attorney, to be hired at the county's expense. This statute requires authorization from the court of common pleas upon a joint application of the prosecuting attorney and the board of county commissioners. Further, R.C. 305.17 requires the board of county commissioners to fix the compensation of appointed counsel.

{¶ 65} In this case, a joint application was not filed by the prosecutor and the Cuyahoga County Board of County Commissioners ("the commissioners") for the appointment of other counsel as required by R.C. 305.14(A). Rather, relators hired their own independent counsel. Simply because respondents refused or ignored the requests of relators, which were made through the BOE, does not obviate the statutory requirement for a trial court's authorization for independent counsel.

{¶ 66} I recognize that relators may have been forced to obtain independent counsel because of respondents' inaction and that certain representations were made by both the prosecutor and the BOE concerning an intention to pay relators' legal fees and expenses if their cases were resolved without convictions.[3] I also recognize that relators made repeated requests to the BOE concerning the appointment of counsel as the criminal proceedings ensued. I do not fully condone the inaction of the prosecutor's office in this matter. Nevertheless, there was nothing that prevented relators from obtaining the statutorily required authorization once the prosecutor expressed a conflict of interest. I am constrained to follow the law in this matter and cannot ignore relators' own failure to comply with the statutory requirements.

{¶ 67} If relators wished to employ independent counsel at county expense, they were statutorily required to obtain authorization for the appointment of

---

**3.** Relators have submitted affidavits attesting that the BOE members unanimously committed and agreed that the BOE would pay relators' legal fees and expenses if they were not convicted of any criminal conduct. It is also averred that Assistant Prosecuting Attorney Reno Oradini informed the BOE members that the county would pay the indicted employees' legal fees only if they were found not guilty. I recognize that relators may have relied on these representations in obtaining independent legal counsel in the criminal proceedings without further pursuing the appointment of said counsel. However, the enforceability of any promise to pay relators' legal fees is not an issue in this matter.

independent counsel during the pendency of the criminal proceedings. Because R.C. 309.09 prevents anyone but the prosecutor from representing a county officer except as provided in R.C. 305.14, other counsel ordinarily should not be appointed unless a proper application has been filed pursuant to R.C. 305.14.[4] *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 462–463, 20 O.O.3d 388, 423 N.E.2d 105; *State ex rel. Stamps v. Automatic Data Processing Bd. of Montgomery Cty.* (1989), 42 Ohio St.3d 164, 167, 538 N.E.2d 105. However, when the prosecuting attorney has a conflict of interest, this joint application is not a prerequisite to a trial court's authorization of outside counsel. *State ex rel. Trumbull Cty. Bd. of Elections v. Trumbull Cty. Bd. of Commrs.*, Trumbull App. No. 2009 TR 85, 2010-Ohio-2281, 2010 WL 2026075, ¶ 20–21; *Stamps*, 42 Ohio St.3d at 167, 538 N.E.2d 105.

{¶ 68} In such circumstances, a court of common pleas may directly appoint legal counsel to represent the county officer without the acquiescence of the prosecuting attorney upon determining that a conflict of interest exists and that the county officer is entitled to representation at county expense. See *State ex rel. Jefferson Cty. Children Servs. Bd. v. Hallock* (1986), 28 Ohio St.3d 179, 182–183, 28 OBR 269, 502 N.E.2d 1036; *Seminatore*, 66 Ohio St.2d at 465, 20 O.O.3d 388, 423 N.E.2d 105. Likewise, an action in mandamus is an appropriate remedy to compel a joint application to the common pleas court. *Trumbull Cty.*; *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Commrs.* (1994), 70 Ohio St.3d 94, 637 N.E.2d 311; *Seminatore*, 66 Ohio St.2d at 463–464, 20 O.O.3d 388, 423 N.E.2d 105.

{¶ 69} In this case, it is uncontroverted that neither the prosecutor nor the commissioners filed an application under R.C. 305.14 to appoint separate counsel for relators. However, despite the prosecutor's obvious conflict of interest, relators retained their own independent counsel without having counsel appointed by the court of common pleas. Relators did not file an action seeking the appointment of independent counsel at the time they were indicted or at any time during the pendency of the criminal proceedings against them. Counsel's requests to the BOE reflect that relators were aware of the conflict of interest and the statutory requirement for the authorization of independent counsel, yet they did not directly seek appointment by the court of common pleas. They filed this action in mandamus seeking the retroactive appointment of counsel and reimbursement for their legal expenses on September 18, 2009, four years after

---

4. I agree with the view expressed in fn. 1 of the majority opinion and the attorney general's determination concerning the appointment of legal counsel for county officials engaging in a good-faith, well-intended attempt to perform official duties or responsibilities that result in criminal charges. However, in my opinion, such a determination is not necessary to the disposition of the within matter.

relators were subpoenaed to testify before the grand jury and well after the criminal proceedings concluded.

{¶ 70} R.C. 309.09 and 305.14 do not authorize a county officer to employ independent legal counsel other than in accordance with the specific terms and procedures set forth therein. 1990 Ohio Atty.Gen.Ops. No. 90–096. The statutes, as written, contemplate the authorization of outside counsel to assist in the defense of a pending action. As the Ohio Supreme Court has recognized, "R.C. 305.14 confers power upon the common pleas court to authorize the appointment of legal counsel other than the prosecuting attorney to represent a county board or officer in a *pending action.*" *Seminatore,* 66 Ohio St.2d at 465, 20 O.O.3d 388, 423 N.E.2d 105. When the required authorization is not obtained, these statutes do not permit the board of county commissioners to reimburse a county officer for legal expenses in an action that is no longer pending. See 1988 Ohio Atty.Gen.Ops. No. 88–055; see also R.C. 305.17.[5] In this case, there was nothing that impeded relators' ability to obtain the required statutory authorization. I believe that the mandamus action is untimely.

{¶ 71} Accordingly, relators have failed to establish that they are county officers under existing law. Even if relators were considered county officers who were legally entitled to representation, they were required by statute to obtain authorization for the appointment of legal counsel at county expense during the pendency of their criminal proceedings. Furthermore, because of the prosecutor's conflict of interest, court authorization was not dependent upon a joint application. Relators failed to comply with the required statutory procedure. For the foregoing reasons, relators have not established their entitlement to the requested extraordinary relief in mandamus.

{¶ 72} For the foregoing reasons, I believe respondents' motion for summary judgment should be granted and the requested mandamus relief denied.

---

5.  It is recognized that reimbursement of legal fees has been permitted in circumstances where approval for the appointment of counsel is obtained during the pendency of a matter. In *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 734 N.E.2d 811, relied upon by relators, an application for the appointment of legal counsel was filed with the common pleas court during the pendency of the budget dispute and reimbursement for legal expenses was found warranted under R.C. 305.14.